UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
::::::::::::::::
UNITED STATES OF AMERICA,

- against -

S.A.C. CAPITAL ADVISORS, L.P., S.A.C. CAPITAL ADVISORS, LLC, CR INTRINSIC INVESTORS, LLC, and SIGMA CAPITAL MANAGEMENT, LLC,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

No. 13 Cr. 541 (LTS)

## ELAN AND WYETH INVESTORS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPEAR AND BE HEARD AT PLEA HEARING AND IN OPPOSITION TO PLEA AGREEMENT

Deborah Clark-Weintraub
Joseph P. Guglielmo
Tom Laughlin
**SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York  10174
Telephone: (212) 223-6444

Gregg S. Levin
David P. Abel
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina  29464
Telephone: (843) 216-9000

*Attorneys for the Wyeth Investors*

Ethan D. Wohl
Krista T. Rosen
Sara J. Wigmore
**WOHL & FRUCHTER LLP**
570 Lexington Avenue, 16th Floor
New York, New York  10022
Telephone: (212) 758-4000

Marc I. Gross
Tamar A. Weinrib
**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
600 Third Avenue, 20th Floor
New York, New York  10016
Telephone: (212) 661-1100

*Attorneys for the Elan Investors*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY....................................................... 1

ARGUMENT ................................................................................................................................. 5

I.    MOVANTS HAVE STANDING TO BE HEARD AS CRIME VICTIMS
UNDER THE CRIME VICTIMS' RIGHTS ACT ............................................................ 5

     A.    Movants are Crime Victims under the CVRA ......................................................... 5

     B.    The CVRA Gives Movants the Right to Appear and Present Oral
Argument on the Adequacy of the Plea Agreement at the Plea Hearing ................. 6

II.    THE COURT SHOULD REJECT THE PLEA AGREEMENT BECAUSE IT
PERMITS DEFENDANTS TO AVOID ADMITTING GUILT FOR THE
PRINCIPAL CONDUCT CHARGED AND DOES SO WITHOUT
ADEQUATE DISCLOSURE ............................................................................................ 8

CONCLUSION ............................................................................................................................ 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Freeman v. United States*,
   131 S. Ct. 2685 (2011) ................................................................................................................8

*Kenna v. U.S. Dist. Court,*
   435 F.3d 1011 (9th Cir. 2006) ....................................................................................................7

*SEC v. Citigroup Global Markets, Inc.*,
   827 F. Supp. 2d 328 (S.D.N.Y. 2011) .....................................................................................10

*SEC v. CR Intrinsic Investors, LLC*,
   ___ F. Supp. 3d ___, 2013 WL 1614999 (S.D.N.Y. Apr. 16, 2013) .......................................10

*SEC v. Vitesse Semiconductor Corp.*,
   771 F. Supp. 2d 304 (S.D.N.Y. 2011) .....................................................................................10

*SEC v. Wang*,
   944 F.2d 80 (2d Cir. 1991) .........................................................................................................6

*United States v. BP Prods. N. Am. Inc.*,
   610 F. Supp. 2d 655 (S.D. Tex. 2009) .......................................................................................8

*United States v. Buonocore*,
   416 F.3d 1124 (10th Cir. 2005) ..................................................................................................9

*United States v. Degenhardt*,
   405 F. Supp. 2d 1341 (D. Utah 2005) ........................................................................................7

*United States v. Gupta*,
   904 F. Supp. 2d 349 (S.D.N.Y. 2012) .......................................................................................6

*United States v. Ingrassia*,
   392 F. Supp. 2d 493 (E.D.N.Y. 2005) .......................................................................................6

*United States v. Olmeda,*
   461 F.3d 271 (2d Cir. 2006) .......................................................................................................9

*United States v. Penev*,
   362 F. App'x 170 (2d Cir. 2010) ................................................................................................8

*United States v. Rubin*,
   558 F. Supp. 2d 411 (E.D.N.Y. 2008) .......................................................................................6

*United States v. Turner*,
   367 F. Supp. 2d 319 (E.D.N.Y. 2005) .......................................................................................5

*United States v. Yonkers Contracting Co.*,
    697 F. Supp. 779 (S.D.N.Y. 1988) ............................................................................................ 10

*W.R. Huff Asset Mgmt. Co. v. Rigas*,
    409 F.3d 555 (2d Cir. 2005) .................................................................................................. 5, 7

**FEDERAL STATUTES, RULES AND REGULATIONS**

18 U.S.C. § 3771 ............................................................................................................... 1, 5, 6, 7

Fed. R. Crim. P. 11 .................................................................................................................. 3, 8, 9

U.S.S.G. § 8C2.4 ............................................................................................................................ 4

United States Attorneys' Manual § 9-16.010 ................................................................................. 9

David E. Kaplan, Michael S. Allen, Chi-Pin Hsu, Gary W. Muensterman and Fred M. Ross (collectively, the "Elan Investors"), together with the City of Birmingham Retirement and Relief System and KBC Asset Management NV (together, the "Wyeth Investors"), respectfully submit this memorandum (i) in support of their motion to appear and be heard at the change of plea hearing scheduled by the Court for November 8, 2013 pursuant to the Crime Victims' Rights Act (the "CVRA"), 18 U.S.C. § 3771, and (ii) in opposition to the plea agreement (the "Plea Agreement") dated November 1, 2013 entered into by the U.S. Attorney's Office for the Southern District of New York (the "USAO") and Defendants (collectively, "SAC").

## INTRODUCTION

The Court should reject the Plea Agreement because it allows SAC to plead guilty without admitting that it is guilty of the principal criminal conduct charged in the Indictment – insider trading in the securities of Elan Corporation, plc ("Elan") and Wyeth. SAC's trades in Elan and Wyeth yielded it profits and avoided losses totaling $276 million and accounted for 93.6% of the total Guideline Fine under the Plea Agreement. Under the Plea Agreement, however, SAC is free to avoid any admission in its allocution that its employees, officers or owner engaged in insider trading in either Elan or Wyeth.

Movants have standing to be heard in connection with the Plea Agreement because they are crime victims within the meaning of the CVRA. The CVRA requires the Court to ensure that victims are afforded their rights and further requires that the Court rule on an application by crime victims to be heard, such as the present motion, "forthwith." 18 U.S.C. §§ 3771(b)(1), 3771(d)(3).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On November 19, 2012, the USAO filed a criminal complaint against Mathew Martoma ("Martoma"), formerly an SAC portfolio manager employed by Defendant CR Intrinsic

Investors, LLC ("CR Intrinsic"), for securities fraud and conspiracy to commit securities fraud arising from his insider trading in Elan and Wyeth securities. *United States v. Martoma*, No. 12 Cr. 973 (PGG). The USAO characterized the insider trading in that case, which pertained only to trades in Elan and Wyeth, as "the most lucrative insider trading scheme ever charged," and alleged that the Defendants gained profits and avoided losses of approximately $276 million. *See United States v. Mathew Martoma, Prepared Remarks for U.S. Attorney Preet Bharara*, at 1 (Nov. 20, 2012). Trial has been scheduled in that matter for January 2014 before Judge Gardephe.

On November 20, 2012, the SEC filed a related civil enforcement action arising out of SAC's insider trading in Elan and Wyeth against Martoma, his tipper, and CR Intrinsic, *SEC v. CR Intrinsic Investors, LLC*, No. 12 Civ. 8466 (VM) (the "SEC action").

On December 21, 2012, certain of the Elan Investors filed a securities class action against SAC arising out of its insider trading in Elan. *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (VM) (KNF) (the "*Kaplan* action"). The Elan Investors were later appointed Lead Plaintiffs by the Court on behalf of investors who traded Elan securities contemporaneously with and opposite to SAC. A separate class action was filed on behalf of investors in Wyeth. The Wyeth Investors were subsequently appointed as Lead Plaintiffs by the Court, and that action was consolidated for pretrial purposes with the *Kaplan* action. By Order dated July 19, 2013, the Court granted relief from the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 and movants thereafter received production of several million pages of documents.

On March 15, 2013, SAC announced that it had settled the SEC action for $602 million. SAC simultaneously settled a second SEC enforcement action against Defendant Sigma Capital Management, LLC arising out of other insider trading for $14 million.

On July 25, 2013, the USAO commenced this action with the Indictment. The USAO described SAC as a "veritable magnet for market cheaters" that "trafficked in inside information on a scale without any known precedent in the history of hedge funds." *United States v. S.A.C. Capital Advisors LP, et al., Prepared Remarks for U.S. Attorney Preet Bharara*, at 1 (July 25, 2013). The five-count Indictment charged each of the Defendants with one count of wire fraud and one count of securities fraud, all relating to insider trading in various companies' securities, and detailed multiple acts of insider trading with respect to each Defendant. *See* ¶¶ 31-34. According to the Indictment, the insider trading in Elan and Wyeth securities generated profits and avoided losses of approximately $276 million. Only one other trade in the Indictment is assigned any dollar value – a trade through which SAC's owner, Steven A. Cohen ("Cohen"), avoided a $1.7 million loss in shares of Dell, Inc. ¶ 32.a. Based on movants' research, none of the other insider trading schemes charged in the Indictment individually resulted in profits or avoided losses of more than $6.4 million.

Simultaneously with the filing of this action, the USAO filed a related civil forfeiture action. *United States v. S.A.C. Capital Advisors, L.P.*, No. 13 Civ. 5182 (RJS).

On November 4, 2013, the USAO announced the Plea Agreement and a settlement of the related civil forfeiture action.

Under the Plea Agreement, a type "C" binding agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), SAC agreed to pay a $900 million fine. SAC also agreed to pay an additional $900 million to settle the civil forfeiture action, against which SAC received a credit of $616 million, reflecting the amounts it had agreed to pay to the SEC in March 2013 – $602 million of which was to be paid on account of its insider trades in Elan and Wyeth.

The sentencing guideline stipulations in the Plea Agreement (at 4-6) confirm that the profits and avoided losses from the Elan and Wyeth trades were an order of magnitude larger than those of all other insider trades charged in the Indictment, combined. For Defendant CR Intrinsic, the base fine amount was $275 million, representing "the pecuniary gain to the organization from the offense" under U.S.S.G. § 8C2.4(a)(2) – almost precisely the profits and losses avoided on trades in Elan and Wyeth. By contrast, for each of the other three Defendants, the total estimated profits and avoided losses were in the range of $7 million to $20 million, yielding base fines of $6.3 million under U.S.S.G. §§ 8C2.4(a)(1), 8C2.4(c) and 8C2.4(d):

| Defendant | Estimated Profits and Avoided Losses | Guidelines Fine Range |
|---|---|---|
| S.A.C. Capital Advisors, L.P. | $7 million - $20 million | $8,820,000 - $17,640,000 |
| SAC Capital Advisors, LLC | $7 million - $20 million | $8,820,000 - $17,640,000 |
| Sigma Capital Management, LLC | $7 million - $20 million | $8,820,000 - $17,640,000 |
| **CR Intrinsic Investors, LLC** | **$275 million** | **$385,000,000 - $770,000,000** |

CR Intrinsic's insider trading in Elan and Wyeth thus accounts for <u>93.6%</u> of the collective Guidelines Fine for all Defendants. Additionally, the Elan and Wyeth trades explicitly account for more than two-thirds of the $900 million civil forfeiture payment.

Under the Plea Agreement, however, *SAC is not required to plead guilty to insider trading in Elan or Wyeth*. Rather, SAC is obligated to admit only that "at least one employee of each of the SAC Entity Defendants engaged in insider trading within the scope of their employment and for the benefit of the respective SAC Entity Defendant." Plea Agreement, at 4. Given that the Indictment describes one or more instances of insider trading by CR Intrinsic unrelated to Elan or Wyeth, *see* ¶¶ 31.b, 34.b, under the terms of the Plea Agreement SAC can avoid any reference to insider trading in Elan and Wyeth in its plea allocution.

The fact that SAC is not required to plead guilty to insider trading in Elan or Wyeth is obscured by the Indictment's use of a single blanket count covering all insider trading with respect to each Defendant. As a result, multiple news stories have mistakenly reported that SAC is required to admit guilt with respect to all of the insider trading charged in the Indictment, as detailed below.

## ARGUMENT

I.  **MOVANTS HAVE STANDING TO BE HEARD AS CRIME VICTIMS UNDER THE CRIME VICTIMS' RIGHTS ACT**

The CVRA affords crime victims the right to "be reasonably heard at any public proceeding in the district court involving . . . [a] plea" in a criminal prosecution. 18 U.S.C. § 3771(a)(4). The statute further directs that the Court ensure that victims are afforded their rights under the CVRA and requires the Court to rule on an application by crime victims – such as the instant motion – "forthwith." 18 U.S.C. §§ 3771(b)(1), 3771(d)(3).

   A.  **Movants are Crime Victims under the CVRA**

As the victims of securities fraud, the Elan and Wyeth Investors are crime victims within the meaning of the CVRA. Subsection (e) of the CVRA, 18 U.S.C. § 3771(e), provides that "the term 'crime victim' means a person directly and proximately harmed as a result of the commission of a Federal offense . . . ." This "include[s] any person who would be considered a 'crime victim' if the government were to establish the truth of the factual allegations in its charging instrument." *United States v. Turner*, 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005).

Here, as discussed above, the Indictment explicitly and at length charged insider trading in Elan and Wyeth. Indictment ¶ 31.a; *see also id.* ¶¶ 14.f, 21.d-21.e, 26.

Victims of securities fraud have been recognized as crime victims under the CVRA in multiple other cases. *See W.R. Huff Asset Mgmt. Co. v. Rigas*, 409 F.3d 555 (2d Cir. 2005)

(securities fraud victims were crime victims with standing to challenge settlement of forfeiture action); *United States v. Rubin*, 558 F. Supp. 2d 411 (E.D.N.Y. 2008) (securities fraud victims were crime victims with standing to be heard in criminal action); *United States v. Ingrassia*, 392 F. Supp. 2d 493 (E.D.N.Y. 2005) (same).  As with other kinds of securities fraud, insider trading is, of course, a fraud on investors in the companies whose securities are illegally traded. *United States v. Gupta*, 904 F. Supp. 2d 349, 352 (S.D.N.Y. 2012) ("Prosecution of insider trading therefore proceeds, as in this case, on one or more theories of defrauding the institution (or its shareholders) that owned the information.").  *See also SEC v. Wang*, 944 F.2d 80, 83 (2d Cir. 1991) ("The victims of defendants' insider trading activities" were investors who traded opposite to them).  In view of that fact, the Department of Justice has compensated investors in public companies with monies recovered through insider trading prosecutions through its crime victim remission program.  *See United States v. Nacchio*, No. 05 Cr. 545 (MSK) (D. Colo.), *available at* http://www.gilardi.com/qwestremission/index.html.

    **B.**    **The CVRA Gives Movants the Right to Appear and Present Oral Argument on the Adequacy of the Plea Agreement at the Plea Hearing**

The CVRA provides crime victims such as movants the right, *inter alia*, to be heard in connection with a defendant's plea:

> **(a) Rights of crime victims.**—A crime victim has the following rights: . . .
>
> (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

18 U.S.C. § 3771(a).

In addition, the CVRA directs that the Court ensure that victims are afforded their rights under the CVRA:

> **(b) Rights afforded.**—
>
> (1) In general.—In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a). . . .  The reasons for any decision denying relief under this chapter shall be clearly stated on the record.

18 U.S.C. § 3771(b).

The mechanism provided for enforcement of such rights is a motion, which the Court is required to decide "forthwith":

> **(3) Motion for relief and writ of mandamus.**—The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred. The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus. The court of appeals may issue the writ on the order of a single judge pursuant to circuit rule or the Federal Rules of Appellate Procedure. The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed. In no event shall proceedings be stayed or subject to a continuance of more than five days for purposes of enforcing this chapter. If the court of appeals denies the relief sought, the reasons for the denial shall be clearly stated on the record in a written opinion.

18 U.S.C. § 3771(d)(3).

The right to be heard under the CVRA specifically includes the right to both submit written materials and appear and present argument. *See Kenna v. U.S. Dist. Court,* 435 F.3d 1011, 1016 (9th Cir. 2006) ("Limiting victims to written impact statements, while allowing the prosecutor and the defendant the opportunity to address the court, would treat victims as secondary participants . . . . The CVRA clearly meant to make victims full participants."). *See also United States v. Degenhardt*, 405 F. Supp. 2d 1341, 1349 (D. Utah 2005) ("the CVRA's right to be 'reasonably heard' gives victims the right to make an in-court statement"). *See also W.R. Huff Asset Mgmt. Co. v. Rigas*, 409 F.3d 555, 564 (2d Cir. 2005) (noting that the CVRA

- 7 -

required "that the court provide victims with an opportunity to be heard concerning a proposed settlement" of forfeiture action and approving a procedure in which the district court permitted argument by the victims' counsel). *Accord United States v. BP Prods. N. Am. Inc.*, 610 F. Supp. 2d 655, 676 (S.D. Tex. 2009) (allowing victims in criminal action against corporate defendant to submit written objections and speak directly to the Court regarding a proposed plea agreement).

## II. THE COURT SHOULD REJECT THE PLEA AGREEMENT BECAUSE IT PERMITS DEFENDANTS TO AVOID ADMITTING GUILT FOR THE PRINCIPAL CONDUCT CHARGED AND DOES SO WITHOUT ADEQUATE DISCLOSURE

With respect to the merits, the Court should reject the Plea Agreement because it does not require Defendants to admit guilt for the principal conduct charged – insider trading in Elan and Wyeth.

This Court has the discretion to reject the Rule 11(c)(1)(C) plea agreement presented here. *Freeman v. United States*, 131 S. Ct. 2685, 2688 (2011) ("Rule 11(c)(1)(C) . . . does not discharge the district court's independent obligation to exercise its discretion."); *United States v. Penev*, 362 F. App'x 170, 173-74 (2d Cir. 2010) (upholding rejection of type C plea agreement, observing that "[t]here is no absolute right to have a guilty plea accepted. A court may reject a plea in exercise of sound judicial discretion.") (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971), alterations in *Penev* omitted); *BP Prods. N. Am. Inc.*, 610 F. Supp. 2d at 674 ("A district court has broad discretion to accept or reject a plea agreement under Rule 11(c)(1)(C)").

The Court here should afford less deference to the USAO than in an ordinary case because the manner in which the Indictment was pled has the effect of circumventing procedural rules and substantive legal principles that would otherwise apply. In other insider trading cases, the USAO and other U.S. Attorney's Offices have charged each individual illegal *trade* as a separate count. *See, e.g.*, *United States v. Gupta*, No. 11 Cr. 907 (JSR) (ECF No. 1 ¶ 31); *United*

*States v. Rajaratnam*, No. 09 Cr. 1184 (LAP) (ECF No. 48 ¶ 51); *United States v. Nacchio*, No. 05 Cr. 545 (D. Colo.) (ECF No. 1 ¶ 9). Here, by contrast, the USAO lumped hundreds of trades directed by multiple individual wrongdoers in the securities of numerous separate companies based on information from disparate sources into a single count against each Defendant – treading the outer boundaries of proper pleading under the rules of criminal procedure. *See United States v. Olmeda,* 461 F.3d 271, 281 (2d Cir. 2006) (indictment that pleaded separate ammunition possessions in single count could reasonably be viewed as "duplicitous," explaining that "duplicitous charging" implicates a concern about providing a sound "basis for appropriate sentencing").

Had the USAO charged insider trading in Elan and Wyeth as a separate count, then to accomplish the no-admit result that the Plea Agreement achieves, the USAO would have been compelled to either dismiss that count – thereby eliminating the basis for approximately 94% of the total Guidelines Fine – or alternatively, permit a *nolo contendere* plea. A *nolo* plea, however, is highly unusual and requires the approval of senior Department of Justice officials. *See* United States Attorneys' Manual § 9-16.010 ("United States Attorneys may not consent to a plea of *nolo contendere* except in the most unusual circumstances and only after a recommendation for doing so has been approved by the Assistant Attorney General responsible for the subject matter or by the Associate Attorney General, Deputy Attorney General or the Attorney General.").

Reflecting the disfavored status of *nolo* pleas under the law, the Federal Rules of Criminal Procedure confer broad discretion on district judges to reject such pleas, calling on the Court to "consider the parties' views and the public interest in the effective administration of justice," Fed. R. Crim. P. 11(a)(3), and the rules permit the district court to adopt a general policy against such pleas. *See United States v. Buonocore*, 416 F.3d 1124, 1129-31 (10th Cir.

2005). As articulated by Judge Connor, among the relevant factors in deciding whether to allow a *nolo* plea are the "nature and duration of the offense;" the "effect that a plea change could have on deterrence;" and "the interests of civil litigants." *United States v. Yonkers Contracting Co.*, 697 F. Supp. 779, 781 (S.D.N.Y. 1988). In determining whether to accept the Plea Agreement here, this Court should consider the same factors, including the effect of a no-admit plea on movants' consolidated class action.

Judges in this District have recently raised concerns regarding defendants' settlement of civil enforcement actions without admitting the conduct at issue. *See, e.g., SEC v. Citigroup Global Markets, Inc.*, 827 F. Supp. 2d 328 (S.D.N.Y. 2011). In April, Judge Marrero imposed conditions on the $602 million settlement of the SEC action arising out of the Elan and Wyeth trades, *SEC v. CR Intrinsic Investors, LLC*, ___ F. Supp. 3d ___, 2013 WL 1614999 (S.D.N.Y. Apr. 16, 2013), citing the public's "interest in knowing the truth in matters of major public concern." *Id.* at *11. As Judge Rakoff noted in another case addressing a no-admit SEC settlement, the "disservice to the public inherent in such a practice is palpable." *SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 304, 309 (S.D.N.Y. 2011).

Judge Rakoff's observations in *Vitesse* are particularly applicable in the matter at bar. There, the court noted that "it appears that defendants who enter into consent judgments where they formally state, with the S.E.C.'s full consent, that they neither admit nor deny the allegations of the complaint, thereafter have no difficulty getting the word out that they are still denying the allegations, notwithstanding their agreement not to 'make any public statement' denying the allegations." *Id.*

Here, within hours of the Plea Agreement's public announcement, SAC issued a statement blaming a few "bad apples" for the guilty plea:

> "We take responsibility for the handful of men who pleaded guilty and whose conduct gave rise to SAC's liability," the firm said. "The tiny fraction of wrongdoers does not represent the 3,000 honest men and women who have worked at the firm during the past 21 years. SAC has never encouraged, promoted or tolerated insider trading."

Peter Lattman & Ben Protess, *SAC Capital Agrees to Plead Guilty to Insider Trading*, N.Y. Times, Nov. 4, 2013, *available at* http://dealbook.nytimes.com/2013/11/04/sac-capital-agrees-to-plead-guilty-to-insider-trading/?_r=0. After the USAO reportedly objected, SAC issued a new statement, still avoiding any acknowledgement of fault, replacing the last sentence above with the comment that "[e]ven one person crossing the line into illegal behavior is too many and we greatly regret this conduct occurred." *Id.*

The Plea Agreement also misleadingly obscures the fact that SAC is not required to admit the conduct charged. Multiple news stories written by sophisticated business and legal reporters have misread the Plea Agreement to require an admission of all of the conduct charged in the Indictment. *See* Matt Levine, *SAC Capital Settles Its Insider Trading Case, Again*, Bloomberg.com, Nov. 6, 2013 (citing the prominence of the Elan and Wyeth trades and reporting that "SAC is pleading guilty to every count and admitting to the specific trades that the government has charged"), *available at* http://www.bloomberg.com/news/2013-11-04/sac-capital-settles-its-insider-trading-case-again.html; Alison Frankel, *The collateral class action consequences of SAC's guilty plea*, Reuters.com, Nov. 4, 2013 ("Shareholders' letter to Swain [dated November 1, 2013, addressing the issue herein] will probably turn out to be moot. When U.S. Attorney Preet Bharara finally announced the terms of SAC's plea on Monday, there was no mention of a carve-out for the Elan and Wyeth trades described in the indictment."), *available at* http://blogs.reuters.com/alison-frankel/2013/11/04/the-collateral-class-action-consequences-of-sacs-guilty-plea/; Jonathan Weil, *SAC Capital's Guilty Plea Makes Old Deal Look Silly*,

bloomberg.com, Nov. 6, 2013 (describing the settlement of the SEC action without an admission as to the Elan and Wyeth trades as "an awful charade," without recognizing that the Plea Agreement has the same defect), *available at* http://www.bloomberg.com/news/2013-11-06/sac-capital-s-guilty-plea-makes-old-deal-look-silly.html.

Finally, the Court should not permit the outcome provided by the Plea Agreement because it has the potential to mislead the public.  As movants will show if directed by the Court, SAC's internal documents establish that the insider trading in Elan and Wyeth charged in the Indictment occurred following numerous communications in which Cohen was personally provided with information that was manifestly confidential and nonpublic, and that he traded on such information.  The casual discussion of inside information in these emails establishes the routine use of such information by Defendants.  SAC should not be allowed to just pay a fine and avoid admitting that it did what the Indictment charges, the sentence requires, and the evidence proves.

**CONCLUSION**

For the foregoing reasons, movants respectfully request (i) that they be granted leave to appear and be heard at the change of plea hearing scheduled by the Court for November 8, 2013, and (ii) that the Court reject the Plea Agreement.

Dated: New York, New York
       November 7, 2013

| | |
|---|---|
| **SCOTT+SCOTT,**<br>**ATTORNEYS AT LAW, LLP** | **WOHL & FRUCHTER LLP** |
| By: *Deborah Clark-Weintraub* /EDW<br>    Deborah Clark-Weintraub<br>    Joseph P. Guglielmo<br>    Tom Laughlin<br>The Chrysler Building<br>405 Lexington Avenue, 40th Floor<br>New York, New York  10174<br>Telephone: (212) 223-6444 | By: *Ethan Wohl*<br>    Ethan D. Wohl<br>    Krista T. Rosen<br>    Sara J. Wigmore<br>570 Lexington Avenue, 16th Floor<br>New York, New York 10022<br>Telephone: (212) 758-4000<br>Facsimile: (212) 758-4004 |
| Gregg S. Levin<br>David P. Abel<br>**MOTLEY RICE LLC**<br>28 Bridgeside Boulevard<br>Mt. Pleasant, South Carolina  29464<br>Telephone: (843) 216-9000<br><br>*Attorneys for the Wyeth Investors* | Marc I. Gross<br>Tamar A. Weinrib<br>**POMERANTZ GROSSMAN HUFFORD**<br>**DAHLSTROM & GROSS LLP**<br>600 Third Avenue, 20th Floor<br>New York, New York  10016<br>Telephone: (212) 661-1100<br>Facsimile: (212) 661-8665<br><br>*Attorneys for the Elan Investors* |