UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :

UNITED STATES OF AMERICA      :

        -v.-            :       13 Cr. 541 (LTS)

S.A.C. CAPITAL ADVISORS, L.P.,  :
S.A.C. CAPITAL ADVISORS, LLC,  :
CR INTRINSIC INVESTORS, LLC, and  :
SIGMA CAPITAL MANAGEMENT, LLC,  :

        Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GOVERNMENT'S SENTENCING MEMORANDUM

                                                            PREET BHARARA
                                                            United States Attorney
                                                            Southern District of New York
                                                           Attorney for the United States
                                                                 of America

ANTONIA M. APPS
ARLO DEVLIN-BROWN
JOHN T. ZACH
Assistant United States Attorneys

      - Of Counsel -

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum in connection with the sentencing of the defendants S.A.C. Capital Advisors, L.P., S.A.C. Capital Advisors, LLC, CR Intrinsic Investors, LLC, and Sigma Capital Management, LLC (the "SAC Entity Defendants"). The Government respectfully requests that the Court approve, pursuant to Rule 11(c)(4) of the Federal Rules of Criminal Procedure, the Plea Agreement executed by the parties on November 1, 2013 (the "Plea Agreement"). For the reasons set forth below, the Government submits that the stipulated penalties set forth in the Plea Agreement constitute a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a)(2).

The stipulated penalties contained in the Plea Agreement consist principally of the following:

- an above-Guidelines criminal fine of $900 million, which is not tax deductible;

- a statutory maximum five-year term of probation for each of the SAC Entity Defendants;

- the condition that the SAC Entity Defendants terminate their investment advisory business; and

- a requirement that the defendants, and any successor entities, employ the compliance procedures necessary to identify and prevent insider trading; and that the defendants retain an independent compliance consultant, to be approved by the Government, who will review, revise, and report to the Government on those compliance procedures.

At the same time the parties executed the Plea Agreement, the SAC Entity Defendants agreed to settle the related civil forfeiture and money laundering action, *United States* v. *S.A.C. Capital Advisors, L.P., et al.*, 13 Civ. 5182 (RJS) (the "Forfeiture Action"). Pursuant to that settlement, the defendants agreed to pay a "Stipulated Total Forfeiture Amount" of $900 million, with credit for the $616 million the defendants had already agreed to pay to resolve the civil enforcement actions brought by the U.S. Securities and Exchange Commission ("SEC") against two of the SAC Entity Defendants. On November 6, 2013, the Honorable Richard J. Sullivan so ordered the Stipulation and Order of Settlement which resolved the Forfeiture Action, contingent on this Court's ultimate approval of the Plea Agreement.

The $900 million fine imposed on the SAC Entity Defendants pursuant to the Plea Agreement is, to the Government's knowledge, the largest criminal fine ever imposed in an insider trading case. When combined with the $900 million judgment in the Forfeiture Action, it represents an amount that is several times larger than the illicit gains and avoided losses resulting from the insider trading alleged in the Indictment. This financial penalty, together with the non-financial penalties and conditions set forth in the Plea Agreement, is an appropriate punishment for the criminal conduct at SAC Capital – where eight employees to date have been convicted of insider trading – and provides a strong message of deterrence to other institutions which may be engaging in illegal insider trading or failing to institute procedures designed to identify and prevent insider trading by its employees. Accordingly, and for the reasons set forth below, the Government respectfully submits that the Court should approve the Plea Agreement.

## I. BACKGROUND

### A. The SAC Hedge Fund

The SAC Entity Defendants served as investment advisors for a group of affiliated hedge funds referred to in the Indictment as the SAC Hedge Fund or SAC Capital. The investment advisors employed portfolio managers and analysts who made trading decisions with respect to money invested in SAC Capital. The majority of the money managed by the SAC Entity Defendants belonged to the hedge fund's owner, founder, and Chief Executive Officer, Steven A. Cohen. At various times, approximately one third of the assets under management came from outside investors. In or around early 2013, SAC Capital had approximately $15 billion in assets under management.

Each of the portfolio managers had autonomous trading authority over a book or portfolio of assets, and employed analysts to assist them in making those trading decisions. Additionally, the portfolio managers were responsible for passing their best trading ideas to the head of the firm, Steven Cohen, who exercised trading authority over the largest portfolio at SAC Capital.

### B. Offense Conduct: Eight Employees Convicted Of Insider Trading

As alleged in the Indictment, at various times between 1999 and 2010, numerous SAC portfolio managers and research analysts engaged in insider trading in at least 20 publicly traded stocks through the portfolios they managed at the SAC Hedge Fund. These portfolio managers and research analysts obtained material non-public information from sources who breached a duty to keep that information confidential and then traded securities in SAC Hedge Fund portfolios based on this material non-public information, for the benefit of themselves and the SAC Hedge Fund. Six SAC portfolio managers and analysts who engaged in such insider

trading have pled guilty: (1) Richard Choo-Beng Lee; (2) Wesley Wang; (3) Jon Horvath; (4) Noah Freeman; (5) Donald Longueuil; and (6) Richard Lee. Two other portfolio managers – Michael Steinberg and Matthew Martoma – have recently been convicted after trial of insider trading, but have yet to be sentenced. These eight individuals engaged in insider trading while employed at the respective SAC Entity Defendants listed below:

- <u>Richard Choo-Beng ("CB") Lee</u> was employed as an analyst by two SAC Entity Defendants, first by S.A.C. Capital Advisors, LLC from 1999 through January 2004, and then by Sigma Capital Management, LLC through 2004. On October 13, 2009, CB Lee pled guilty to obtaining material non-public information in breach of a duty of trust or confidence with respect to at least three different technology companies and providing trading ideas based on this material non-public information to others at the SAC Hedge Fund, including to the portfolio manager for whom he worked.

- <u>Wesley Wang</u> was employed as an analyst by Sigma Capital Management, LLC from 2002 through 2005. On July 13, 2012, Wang pled guilty to obtaining material non-public information in breach of a duty of trust or confidence with respect to approximately seven technology companies and providing trading ideas based on this material non-public information to the portfolio manager for whom he worked.

- <u>Jon Horvath</u> was employed as an analyst by Sigma Capital Management, LLC from October 2006 through 2011. On September 28, 2012, Horvath pled guilty to obtaining material non-public information in breach of a duty of trust or confidence with respect to Dell and NVIDIA and providing trading ideas based on this material non-public information to the portfolio manager for whom he worked (Michael Steinberg).

- <u>Noah Freeman</u> was employed as a portfolio manager by two SAC Entity Defendants, first by S.A.C. Capital Advisors, LLC from mid-2008 through December 31, 2008, and subsequently by S.A.C. Capital Advisors, L.P. from 2009 through early 2010, when Freeman was terminated. On February 7, 2011, Freeman pled guilty to obtaining material non-public information in breach of a duty of trust or confidence with respect to approximately eight technology companies and trading on the basis of this material non-public information in the portfolio he managed for the SAC Hedge Fund.

4

- <u>Donald Longueuil</u> was employed as a portfolio manager by CR Intrinsic Investors, LLC from mid-2008 through mid-2010. On April 28, 2011, Longueuil pled guilty to obtaining material non-public information in breach of a duty of trust or confidence with respect to approximately eight technology companies and trading on the basis of this material non-public information in the portfolio he managed for the SAC Hedge Fund.

- <u>Richard Lee</u> was employed as a portfolio manager by S.A.C. Capital Advisors, L.P. from April 2009 through mid-2011, and again from September 2012 through March 2013. On July 23, 2013, Lee pled guilty to obtaining material non-public information in breach of a duty of trust or confidence with respect to multiple public companies, including Yahoo, and trading on the basis of this material non-public information in the portfolio he managed for the SAC Hedge Fund.

- <u>Michael Steinberg</u> was employed as a portfolio manager by Sigma Capital Management, LLC from May 2003 through 2013. (He had previously been a portfolio manager for S.A.C. Capital Advisors, LLC since May 1996.) On December 18, 2013, Michael Steinberg was convicted after a trial of conspiracy to commit insider trading from late 2007 through 2009, and four substantive counts of insider trading relating to the stocks Dell and NVIDIA, based on inside information provided to Steinberg by his analyst, Jon Horvath. Steinberg earned approximately $1.8 million in illegal profits based on trading in Dell and NVIDIA for the SAC Hedge Fund. Following communications between Steinberg and Steven Cohen in August 2008, shortly after Steinberg traded on the Dell inside information Horvath provided to him, Cohen sold a position in Dell stock that he had in his portfolio, resulting in an additional $1.8 million in avoided losses. Michael Steinberg is scheduled to be sentenced before the Honorable Richard J. Sullivan on May 16, 2014.

- <u>Matthew Martoma</u> was employed as a portfolio manager by CR Intrinsic Investors, LLC from 2006 to 2008. On February 6, 2014, Mathew Martoma was convicted after trial of conspiracy to commit insider trading and two counts of insider trading based on inside information he received from doctors involved in confidential clinical drug trials being conducted by the pharmaceutical companies Elan Corporation, plc ("Elan") and Wyeth. Martoma's trading in Elan and Wyeth, together with trading in those stocks by Steven Cohen in various firm accounts following communications between Martoma and Steinberg, netted the firm approximately $275 million in illegal profits and avoided losses. Martoma is scheduled to be sentenced before the Honorable Paul G. Gardephe on June 10, 2014.

### C.   Allegations Of Institutional Failure

As alleged in the Indictment, the unlawful conduct of the employees listed above was "made possible by institutional practices that encouraged the widespread solicitation and use of illegal inside information," resulting in illicit trading between 1999 and 2010 that was "substantial, pervasive and on a scale without known precedent in the hedge fund industry." (Indictment ¶ 1.)  These institutional shortcomings included deficiencies in hiring, compliance policies, and the tone set by high-level personnel at the firm. (Indictment ¶ 15.)

In particular, the SAC hiring process focused disproportionally on hiring portfolio managers and research assistants with proven access to public company insiders and lacked a commensurate commitment to ensuring that SAC's new recruits had previously not used, or would not continue to use, their prior industry contact networks to obtain material non-public information. (*See* Indictment ¶¶ 16-19.)  SAC maintained compliance manuals and procedures that had the appearance of following the law, but failed to implement procedures designed to identify and prevent individuals from engaging in insider trading.  Thus, it was not until near the end of the alleged insider trading scheme that SAC instituted a procedure for reviewing trading patterns for suspicious activity or implemented a procedure for the review of electronic communications.  Further, SAC failed effectively to monitor its own employees' use of expert networking firms.  As a result, SAC Capital failed to detect any of the eight proven instances of insider trading conduct at its firm that formed the basis of the charged criminal conduct. (*See* Indictment ¶¶ 24 – 29.)

Finally, with respect to the tone set by senior management, there were numerous instances in which portfolio managers or research analysts recommended trading ideas that, at

6

the very least, raised a substantial question and should have served as a red flag about whether the SAC employee had obtained illegal material non-public information. In these examples, however, senior management addressed the merits of the proposed trade but failed to address or ascertain whether the trading recommendations were based on material non-public information. (*See* Indictment ¶¶ 21-23.)

## II.   THE PLEA AGREEMENT AND PLEA HEARING

The key provisions of the Plea Agreement executed by the parties on November 1, 2013, are as follows: (1) a plea of guilty by each of the SAC Entity Defendants to each count of the Indictment, and a stipulated Guidelines Range that encompasses the full scope of the charged conduct; (2) a substantial financial penalty, in excess of the penalty called for by the Sentencing Guidelines; and (3) a series of non-financial penalties, including a five-year term of probation, termination of the SAC Hedge Fund's investment advisory business, implementation of effective compliance policies and procedures, and the retention of an independent consultant to review and report on SAC's implementation of the revised compliance procedures. The Plea Agreement does not provide immunity from prosecution for any individual and does not restrict the Government from charging any individual for any criminal offense and seeking the maximum term of imprisonment applicable to any such violation of criminal law. The Plea Agreement is subject to the Court's approval pursuant to Rule 11(c)(4) of the Federal Rules of Criminal Procedure. The Government notes that the Probation Department's recommendations in its Presentence Investigation reports for each of the SAC Entity Defendants mirror the penalties set forth in the Plea Agreement. Accordingly, for the reasons set forth below, and for the reasons set

forth in the Presentence Investigation reports for each of the four defendants, the Government respectfully requests that the Court approve the terms of the Plea Agreement.

1. The Plea Agreement Requires SAC To Take Full Responsibility For The Charged Crimes

Pursuant to the Plea Agreement, the SAC Entity Defendants were required to plead guilty to all five counts in the Indictment. Count One charged all four defendants with wire fraud, in violation of 18 U.S.C. § 1343; Counts Two through Five charged each SAC Entity Defendant separately with securities fraud, in violation of 15 U.S.C. § 78j(b) and 78ff, and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2. Pursuant to the Plea Agreement, and consistent with Rule 11, at the plea hearing held on November 8, 2013, the SAC Entity Defendants pled guilty to all five counts set forth in the Indictment. During the plea allocution given by SAC Capital's General Counsel, on behalf of each of the four SAC Entity Defendants, each defendant admitted that it was pleading guilty based on the conduct of its respective former employees who had pled guilty and who had engaged in insider trading within the scope of their employment and for the benefit of the respective SAC Entity Defendant. Specifically, SAC's General Counsel allocuted to the conduct of Noah Freeman (Plea Tr. 25-26, 27) for S.A.C. Capital Advisors, L.P. and S.A.C. Capital Advisors, LLC (Counts One, Two, and Three); Richard Lee (Tr. 26) for S.A.C. Capital Advisors, L.P. (Counts One and Two); Donald Longueil (Tr. 27-28) for CR Intrinsic Investors, LLC (Counts One and Four); Jon Horvath (Tr. 28), Wesley Wang (Tr. 28-20), and Richard CB Lee (Tr. 28-29) for Sigma Capital Management, LLC (Counts One and Five).[1]

---

[1] At the time of the plea, Michael Steinberg and Mathew Martoma had not yet been convicted of insider trading and SAC's General Counsel did not, consistent with the Plea Agreement and Rule 11, reference their criminal conduct in the plea allocution. As noted above, since the plea, both Steinberg and Martoma have been convicted. In any event, the Stipulated

8

## 2. The Plea Agreement Imposes A Substantial Financial Penalty

The Plea Agreement provides that the SAC Entity Defendants must pay a total criminal fine of $900 million, which is above the aggregated Sentencing Guidelines range in the Plea Agreement of $411,460,000 to $822,920,000.[2] Moreover, the Sentencing Guidelines range in the Plea Agreement is based on all of the illicit profits gained and losses avoided resulting from all of the insider trading alleged in the Indictment, including gains and losses avoided by Steinberg and Martoma. Likewise, the Guidelines Range includes all applicable enhancements, including the enhancement in U.S.S.G. § 8C2.5(3)(A), which is applicable when "(i) an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense; or (ii) tolerance of the offense by substantial authority personnel was pervasive throughout the organization"). As noted above, the SAC Entity Defendants have agreed "not [to] dispute that there is a factual basis for the Guidelines calculation" set forth in the Plea Agreement. (Plea Agreement at 4).

A further condition to the Plea Agreement is the settlement of the Forfeiture Action. The SAC Entity Defendants have agreed to pay an additional $900 million in forfeiture to resolve the Forfeiture Action pursuant to a Stipulation and Proposed Order of Settlement. The settlement was approved by the District Court on November 6, 2013, which is effective upon this Court's

---

Guidelines Sentence is based on all of the conduct charged in the Indictment, including all insider trading profits earned and losses avoided by Steinberg and Martoma.

[2] Pursuant to the Plea Agreement, the $900 million fine is to be divided between the four defendants as follows: (i) S.A.C. Capital Advisors, L.P. - $1,000,000 on Count One and $25,000,000 on Count Two; (ii) S.A.C. Capital Advisors, LLC - $1,000,000 on Count One and $25,000,000 on Count Three; (iii) CR Intrinsic Investors, LLC - $411,000,000 on Count One and $411,000,000 on Count Three; (iv) Sigma Capital Management, LLC - $1,000,000 on Count One and $25,000,000 on Count Four. The Probation Department has recommended that the fine be allocated amongst the defendants in this manner.

approval of the Plea Agreement. The defendants will receive a credit against for the forfeiture amount for the $616 million they had previously agreed to pay to resolve the civil enforcement actions brought by the SEC against CR Intrinsic Investors, LLC and Sigma Capital Management, LLC. Thus, the balance owing in the Forfeiture Action is $284 million.

Neither the criminal fine, nor the forfeiture amount due in the civil action, are tax deductible; that is, the SAC Entity Defendants have agreed that neither they nor any other person paying the fine or forfeiture amount can claim or apply for a tax deduction based on those payments. (*See* Plea Agreement at 8).

    3.    The Plea Agreement Imposes A Series Of Non-Financial Penalties Aimed At Preventing Future Wrongdoing

The most significant "non-financial" penalty imposed on the SAC Entity Defendants by the Plea Agreement is that they must terminate their investment advisory business. That means that the SAC Entity Defendants may no longer accept and manage outside investors' money. This condition is permanent; that is, the defendant entities may never again accept third-party money for investment. Moreover, the wind-down of the investment advisory business of the SAC Entity Defendants must be on terms approved by the SEC.

The Plea Agreement also requires the SAC Entity Defendants to be placed on probation during the period that they will be winding down. Probation will last until the SAC Entity Defendants exit the securities trading business entirely, up to the statutory maximum of five years. An express condition of probation – in addition to the standard conditions, such as committing no further crimes – will be that the SAC Entity Defendants employ appropriate compliance procedures to identify and prevent insider trading.

Further, the compliance obligation extends not only to the named defendants, but also to any successor entities created by the SAC owner or its affiliates. Specifically, the Plea Agreement provides that the defendants will "retain, at their own expense, no later than ten days after imposition of sentence, a compliance consultant approved by the Office who will, pursuant to terms approved by the Office, evaluate and report on the insider trading compliance procedures (including but not limited to hiring, information-gathering, training and related practices) of the SAC Entity Defendants," affiliated entities, and any "newly formed entities owned or controlled by the owners of the SAC Entity Defendants" engaged in the securities trading business. (*See* Plea Agreement at 3.) The Plea Agreement further provides that the compliance consultant will review, and identify any deficiencies in, the insider trading compliance procedures of the defendants (and any successor entities), and file a report with the United States Attorney's Office ("USAO") within 45 days of retention. The report to the USAO must describe any deficiencies, and the steps the SAC entities have taken to correct these deficiencies. The compliance consultant must also file a second report within six months of retention to describe the progress of the SAC entities in correcting any compliance deficiencies, and, if deemed necessary by the USAO, a final report to the USAO that identifies any continuing deficiencies identified in the six-month report. (*See id.*)

Following the guilty plea in this case, the SAC Entity Defendants proposed retaining as a compliance consultant Bart Schwartz, the Chairman and Chief Executive Officer of Guidepost Solutions LLC. Mr. Schwartz, who has considerable experience in this area and has acted as a monitor on other significant cases, has been approved by the Government to act as an independent compliance consultant to SAC.

11

Finally, each of the SAC Entity Defendants agrees that it will not authorize or approve any statement, in litigation or otherwise, through the term of probation, that (i) contradicts the guilt of the SAC Entity Defendants, (ii) contradicts the plea allocution of the SAC Entity Defendants, or (iii) contradicts that there is a sufficient factual basis to establish the Guidelines calculation set forth in the Plea Agreement. (*See* Plea Agreement at 9.)

### III. THE STIPULATED PENALTIES SATISFY THE SENTENCING GOALS OF SECTION 3553(a)

Section 3553(a) provides that the Court shall impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553(a)(2)," namely, the need for the sentence imposed:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner.

The Government respectfully submits that the financial and non-financial components of the stipulated penalties in the Plea Agreement constitute a sentence that is fully consistent with the sentencing goals set forth in Section 3553(a). First, the $900 million fine proposed in the criminal case – particularly when combined with the forfeiture amount stipulated in the Forfeiture Action – is very substantial. The criminal fine alone represents what the Government believes to be the largest criminal fine ever imposed in an insider trading case. Moreover, the financial penalty is several times larger than the gains and avoided losses to the SAC Entity

Defendants from all of the insider trading that the Government has alleged in the criminal case and Forfeiture Actions.  Significantly, the financial penalty is above the penalty provided for by the Sentencing Guidelines, which, in turn, are based on all of the profits and avoided losses alleged in the Indictment and all applicable enhancements.  Thus, the financial penalty being sought is steep but fair:  it represents an appropriate punishment in light of the breadth and duration of the criminal conduct at SAC Capital, and deters similar misconduct at other institutions.  That criminal conduct included (but is not limited to) the actions of eight SAC employees who have either pled guilty or been found guilty at trial of engaging in insider trading.  The combined criminal and civil penalty of $1.8 billion is further warranted because of the institutional practices, described in the Indictment, that encouraged SAC employees aggressively to pursue an informational "edge" while failing to put in place safeguards to ensure that such an edge was lawfully obtained, resulting in an institutional indifference to illegal insider trading.  In sum, the financial penalties imposed on the defendants "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense."  Section 3553(a)(2)(A).

The non-financial penalties, moreover, further the goals of both specific and general deterrence.  In particular, the requirement that the SAC Entity Defendants terminate their investment advisory business reduces the opportunity for further criminal violations by SAC Capital and imposes an additional punishment on the hedge fund for its criminal conduct.  The various compliance-oriented measures in the Plea Agreement, including the statutory maximum period of probation and the retention of the independent compliance consultant, similarly guard against further wrongdoing by SAC Capital specifically and protect the public from potential

future insider trading violations.  These measures also provide the appropriate correctional reforms for an institution convicted of insider trading.  *See* 18 U.S.C. § 3553(a)(2)(D).  Finally, these stiff penalties – in particular, the permanent bar on SAC Capital from engaging in the investment advisory business – strongly deter other investment advisors from engaging in insider trading and incentivize them to implement adequate procedures to prevent their own employees from engaging in such criminal conduct.

Accordingly, the Government respectfully requests that the Court accept the plea pursuant to the Rule 11(c)(4) of the Federal Rules of Criminal Procedure, and submits that the stipulated penalties contained therein represent a sentence that meets the goals of sentencing set forth in Section 3553(a).

## IV.   RESTITUTION

Elan Corporation has submitted a claim for restitution under the Mandatory Victim Restitution Act ("MVRA").  (*See* Letter to the Hon. Laura T. Swain from Terence M. Healy, Esq., dated March 26, 2014.)  Elan is a victim of the offenses for which SAC Capital has been convicted and, as such, is entitled to provable pecuniary losses traced to the offense, including legal fees.

### A.   Applicable Law

"The MVRA provides for mandatory restitution in all sentencing proceedings for convictions of any offense that is, *inter alia*, an offense against property under Title 18 in which an identifiable victim or victims has suffered a pecuniary loss." *United States* v. *Bengis*, 631 F.3d 33, 38-39 (2d Cir. 2011) (citing 18 U.S.C. §§ 3663A(c)(1)(A)(ii)-(c)(1)(B)).  Under the statute, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court

14

by the preponderance of the evidence." *United States* v. *Bahel*, 662 F.3d 610, 647 (2d Cir. 2011) (citation omitted). The Court need only determine a reasonable estimate of the victim's actual losses if it is impossible to determine the precise amount. *See United States* v. *Catoggio*, 326 F.3d 323, 329 (2d Cir. 2003) (citing *United States* v. *Futrell*, 209 F.3d 1286, 1292 (11th Cir. 2000)). The statute instructs that restitution is not mandatory if "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3). But the Second Circuit has explained that restitution is proper in an "admittedly complex case" so long as the sentencing court does not consider the imposition and administration of restitution to be "unduly burdensome." *Catoggio*, 326 F.3d at 328.

Finally, when fashioning a restitution order, the sentencing court can compensate a victim for attorney fees resulting from the victim's participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense. *See United States* v. *Amato*, 540 F.3d 153, 159 (2d Cir. 2008) (holding that "attorney fees and accounting costs" qualify as "other expenses" under the MVRA and are therefore compensable).

    B.    <u>Elan's Claim For Restitution</u>

Material non-public information belonging to Elan was misappropriated by a doctor retained by Elan as a consultant and provided to Matthew Martoma in breach of the doctor's duties of confidentiality owed to Elan. In accordance with prior precedent in this District, because Elan was directly and proximately harmed by the conduct of at least one of the SAC Entity Defendants, CR Intrinsic Investors, LLC, which has pled guilty to an offense

encompassing Martoma's criminal conduct (although it has not specifically allocated to Martoma's conduct), Elan satisfies the definition of a "victim" under the MVRA.

As a victim of the offense of conviction under the MVRA, Elan is entitled to compensation for pecuniary losses stemming from the offense, including all fees that are the "direct and foreseeable result" of the wrongful conduct. *Amato*, 540 F.3d at 162. Those fees can include legal fees incurred in responding to a Government investigation, including parallel investigations conducted by the SEC. *See United States* v. *Ebrahim*, 12 Cr. 471 (JPO), 2013 WL 2216580, *2 (S.D.N.Y. May 21. 2013) (holding that AT&T, whose employee provided AT&T's confidential information to hedge fund employees through a consulting arrangement with an expert networking firm, was a victim under the MVRA and entitled to restitution of attorneys' fees incurred in responding to the Government's investigation); *United States* v. *Gupta*, 11 Cr. 907 (JSR), 2013 WL 662954, at *1 (S.D.N.Y. Feb. 25, 2013) (holding that Goldman Sachs was a victim of the actions of its board member Rajat Gupta, who provided Goldman's confidential information to a hedge fund manager in violation of a duty of confidence owed to Goldman, and was entitled to recover fees incurred in connection with a parallel SEC action); *United States* v. *Skowron*, 839 F. Supp. 2d 740, 744-26 (744-46) (S.D.N.Y. 2012) (holding that fees incurred in connection with a parallel SEC investigation were recoverable). Here, Elan provided documents and made certain witnesses available to the Department of Justice in connection with its investigation of SAC Capital's insider trading in Elan stock, and also provided documents to the SEC in connection with a parallel investigation of insider trading in Elan stock. To the extent Elan can demonstrate that its legal fees and expenses were incurred in connection with the

investigation by the Department of Justice or the SEC regarding Martoma's insider trading conduct in Elan, it is entitled to restitution for such reasonably incurred fees.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should accept and approve the Plea Agreement, and impose a sentence reflecting the financial and non-financial penalties set forth in the Plea Agreement.

Dated: New York, New York
April 3, 2014

                Respectfully submitted,

                PREET BHARARA
                United States Attorney
                Southern District of New York

By: _____
      Antonia M. Apps
      Arlo Devlin-Brown
      John T. Zach
      Assistant United States Attorneys
      (212) 637-2198/2506/2410