E4ansac1                        Sentence

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                           13 CR 541 (LTS)

5    S.A.C. CAPITAL ADVISORS, L.P.,
     S.A.C. CAPITAL ADVISORS LLC,
6    CR INTRINSIC INVESTORS, LLC,
     SIGMA CAPITAL MANAGEMENT, LLC,
7
                   Defendants.
8    ------------------------------x

9                                         New York, N.Y.
                                          April 10, 2014
10                                        10:45 a.m.

11   Before:

12                   HON. LAURA TAYLOR SWAIN,

13                                         District Judge

14                          APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     ANTONIA APPS
17   ARLO DEVLIN-BROWN
     JOHN ZACH
18        Assistant United States Attorneys
     MATTHEW CALLAHAN
19   JAMES HINKLE
          Special Assistant United States Attorneys
20
     WILLKIE FARR & GALLAGHER LLP
21        Attorneys for Defendants
     MARTIN B. KLOTZ
22   MICHAEL S. SCHACHTER

23   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
          Attorneys for Defendants
24   THEODORE V. WELLS, JR.
     DANIEL J. KRAMER

25
```

E4ansac1                    Sentence

                        APPEARANCES (Continued)

ALSO PRESENT:
     PETER A. NUSSBAUM, ESQ., S.A.C. Capital Advisors, L.P.
     TERENCE HEALY, ESQ., Elan Pharmaceuticals, LLC

E4ansac1                         Sentence

```
 1              (In open court)

 2              (Case called)

 3              THE COURT:  Good morning, counsel.

 4              Would you introduce yourselves, please

 5              MS. APPS:  Your Honor, Antonia Apps for the United

 6    States.  With me at counsel table are my colleagues, Assistant

 7    United States Attorneys Arlo Devlin-Brown and John Zach, and

 8    special assistants with the FBI Matthew Callahan and James

 9    Hinkle.  Good morning, your Honor.

10              THE COURT:  Good morning, Ms. Apps, Mr. Devlin-Brown,

11    Mr. Zach, Special Agent Callahan and Special Agent Hinkle.

12              MR. KLOTZ:  Good morning, your Honor.  Martin Klotz

13    for the S.A.C. defendants.

14              THE COURT:  Good morning, Mr. Klotz.

15              MR. WELLS:  Good morning, your Honor.  Ted Wells for

16    the S.A.C. defendants.

17              THE COURT:  Good morning, Mr. Wells.

18              MR. KRAMER:  Your Honor, Dan Kramer for S.A.C. as

19    well, good morning.

20              THE COURT:  Good morning, Mr. Kramer.

21              MR. SCHACHTER:  Good morning, your Honor.  Michael

22    Schachter of behalf of the S.A.C. defendants.

23              THE COURT:  Mr. Nussbaum, are you representing the

24    companies again?

25              MR. NUSSBAUM:  Yes, I am.
```

E4ansac1                        Sentence

1            THE COURT:  Good morning, Mr. Nussbaum.

2            MR. NUSSBAUM:  Good morning, your Honor.

3            THE COURT:  Please be seated.

4        We are here today for the Court's determination as to

5    whether to accept certain guilty pleas that were tendered on

6    November 8, 2013, whether to accept the proposed dispositions

7    that are detailed in the plea agreement entered into between

8    the government and the defendants, and further proceedings

9    consistent with the Court's determinations.

10           Ms. Apps, would you make a statement regarding the

11   government's position with respect to victim identification and

12   notification.

13           MS. APPS:  Your Honor, actually, victim issues is one

14   matter Mr. Devlin-Brown is going to handle at this proceeding,

15   so he will address the Court with respect to that.

16           THE COURT:  Thank you.

17           Mr. Devlin-Brown.

18           MR. DEVLIN-BROWN:  Your Honor, as we said when the

19   case was initially brought, the government has been in contact

20   with a number of the victims, and our view is that the victims

21   in this case are the public companies whose information was

22   stolen.  We have been in contact with them because we have had

23   various trials that have involved those victims.  As your Honor

24   knows, we were recently informed, as was the Court, that Elan

25   Pharmaceuticals viewed itself as a victim that was entitled to

1    restitution and put in a claim for restitution.

2              I know your Honor may intend to get to this later in

3    any event, but we were informed at the outset, just before

4    these proceedings began, that Elan has withdrawn that claim,

5    that they have reached a settlement with S.A.C. in which their

6    losses as a result of this offense that they would be entitled

7    to under the MVRA have been compensated.  Whenever your Honor

8    wishes, if you wish, there is someone from Elan here who can

9    confirm that on the record.

10             THE COURT:  I guess we might as well do that now since

11   we are on the topic of the claims.  So would the representative

12   of Elan please come forward to the podium.

13             Good morning, sir.

14             MR. HEALY:  Terence Healy on behalf of Elan

15   Pharmaceuticals LLC.

16             As your Honor knows, we submitted an MVRA request on

17   behalf of Elan.  As Mr. Devlin-Brown, said we reached an

18   agreement with S.A.C. this morning under which Elan has been

19   restored for its losses, and we have withdrawn our request or

20   are asking the Court to withdraw our request and we will

21   resolve this matter separately.

22             THE COURT:  Thank you, sir.

23             MR. HEALY:  Thank you.

24             THE COURT:  On November 8, 2013, the defendants

25   Capital Advisors LP, Capital Advisors LLC, CR Intrinsic

1    Investors LLC and Sigma Capital Management LLC each proposed to

2    withdraw its plea of not guilty to the indictment labeled 13

3    Cr. 541 and enter a plea of guilty under an agreement pursuant

4    to Federal Rule of Criminal Procedure 11(c)(1)(C), which allows

5    the government to enter into an agreement that a specific

6    sentence is the appropriate disposition of the case and binds

7    the Court once the Court accepts the plea agreement.  The Court

8    may either accept or reject the plea agreement.

9           On November 8, the Court reserved decision as to

10   whether it would accept the pleas and the plea agreement as

11   proposed.

12          I have received and reviewed the November 4, 2014

13   letter from the government to Judge Sullivan and the

14   undersigned; the November 1, 2014 plea agreement; the

15   stipulation and order of settlement in United States of America

16   v. Capital Advisors LP, et al., 13 Civ. 5182, which was so

17   ordered by Judge Sullivan on November 6, 2013; the presentence

18   investigation report for each of the defendants, each dated

19   April 1, 2014, including the recommendations and addenda; as

20   well as a letter dated March 27, 2014, from defense counsel.

21          I also received and reviewed correspondence relating

22   to the Elan Pharmaceuticals claim, namely, an April 3, 2014,

23   submission from Elan, I'm sorry, no.  I take that back.  So let

24   me start in the middle of that.

25          I have a March 27 submission sentencing submission

E4ansac1                    Sentence

1    from defense counsel, an April 3, 2014 letter from the

2    government, a letter from the Elan Pharmaceuticals dated March

3    26, 2014 requesting restitution, a letter from defendants

4    opposing restitution dated April 8, 2014, and a reply letter

5    from Elan dated April 9, 2014.

6            Are there any other written submissions that the

7    parties intend me to have considered in connection with the

8    determinations that will be made by the Court today?

9            MS. APPS:  No, your Honor.

10           MR. KLOTZ:  No, your Honor.

11           THE COURT:  Thank you.

12           Mr. Nussbaum will be serving as the representative of

13   the defendants today, correct, Mr. Klotz?

14           MR. KLOTZ:  That's correct, your Honor.

15           THE COURT:  I have received written consents from each

16   of the companies designating Mr. Nussbaum, and those have been

17   marked as Court Exhibits.  I believe you have them there,

18   Mr. Klotz.

19           MR. KLOTZ:  We have the original court exhibits, your

20   Honor, yes.

21           THE COURT:  Would you confirm with respect to each one

22   as I call it out that you have a signed original marked there.

23           First, for Capital Advisors LP, is that Court Exhibit

24   1?

25           MR. KLOTZ:  It is, your Honor.

E4ansac1                          Sentence

1          THE COURT:  Has that been executed?

2          MR. KLOTZ:  It has.

3          THE COURT:  By the general partner?

4          MR. KLOTZ:  Yes.

5          THE COURT:  For Capital Advisors LLC, Court Exhibit 2,

6     has that been executed by the members?

7          MR. KLOTZ:  Yes, it has.

8          THE COURT:  For CR Intrinsic Investors LLC, marked as

9     Court Exhibit 3, has that been executed by the member?

10         MR. KLOTZ:  Yes, it has.

11         THE COURT:  And for Sigma Capital Management LLC,

12    Court Exhibit 4, has that been executed by the member?

13         MR. KLOTZ:  Yes, it has, your Honor.

14         THE COURT:  Thank you.

15         At the end of the proceedings, Ms. Ng will take those

16    back from you.

17         THE COURT:  The Court finds that the defendant's plea

18    allocutions as recorded and the government's factual proffers

19    as to the evidence that would be available should there be a

20    trial on the charges in the indictment in this case are

21    sufficient to establish that the defendants understand their

22    rights and are waiving them voluntarily and that each of the

23    guilty pleas to each count of the indictment is supported by an

24    independent basis in fact.

25         I now accept the guilty pleas of each of the defendant

1     entities and adjudge them guilty of the crimes charged in

2     indictment 13 Cr. 541.

3             I will now consider whether the penalty provisions of

4     the November 1, 2013 plea agreement are sufficient to address

5     the statutory purposes of sentencing and determine whether the

6     Court will accept the plea agreement and stipulated penalties

7     pursuant to 11(c)(3)(A) of the plea agreement, reject the

8     proposed penalty provisions, and give the defendants the

9     opportunity to withdraw their pleas.

10            So I now turn to the sentencing-related portion of the

11    advocacy.

12            Mr. Klotz, have you read the presentence report and

13    discussed it with a representative or representatives of each

14    of the four defendants?

15            MR. KLOTZ:  Yes, your Honor.

16            THE COURT:  Mr. Nussbaum, have you reviewed the

17    presentence reports on behalf of each of the companies?

18            MR. NUSSBAUM:  I have, your Honor.

19            THE COURT:  Have you discussed them with the

20    companies' attorneys?

21            MR. NUSSBAUM:  I have, your Honor.

22            THE COURT:  Do you need to remain seated today?

23            MR. NUSSBAUM:  No, I'm much better.  Thank you, your

24    Honor.

25            THE COURT:  I am glad to hear that.  You can be seated

E4ansac1                          Sentence

1   now.

2          Mr. Klotz, do you have any objections or other issues

3   with respect to the content of any of the reports that you wish

4   to address at this time?

5          MR. KLOTZ:  Judge, on the factual portions nothing

6   beyond what we brought to the probation department's attention,

7   and it was incorporated in their final report.  I have a couple

8   of comments on the recommendations at the end, but I can

9   reserve those until later.

10         THE COURT:  I will call on you to speak about those

11  later.

12         MR. KLOTZ:  Sure.

13         THE COURT:  Thank you.

14         Ms. Apps, does the government have any objections or

15  other issues with respect to the content of the report?

16         MS. APPS:  It has no objections or issues, your Honor.

17         THE COURT:  Thank you.

18         I do have a number of questions for the government.

19         First, what are the actual computed profit and avoided

20  loss amounts for each company based on the government's

21  investigations?

22         The reports that I have received speak merely in terms

23  of ranges and also don't translate those ranges into the

24  corresponding statutory maxima, which, as you know, for each

25  charge have a formula for the wire fraud charges that are $1

E4ansac1                    Sentence

1   million or, if greater, twice the gains or losses for the

2   securities fraud charges; $25 million or, if greater, twice the

3   gains or losses, and those alternative figures are not in the

4   reports for any company other than CR Investors.

5           So I would be grateful if you would enlighten me.

6           MS. APPS:  Your Honor, let me start by saying as an

7   initial matter and in response to the first question that you

8   raised, in the order that your Honor issued, the guidelines

9   ranges for each entity set forth in the plea agreement and as

10  reflected in the probation reports reflects and includes all

11  the relevant conduct for all culpable persons to the extent

12  known to the government and includes all of those acting upon

13  information that was provided by culpable persons.

14          In short, it is not limited to the eight individuals

15  who have been convicted of insider trading, and of course that

16  includes, Mr. Matthew Martoma and Michael Steinberg.  But the

17  guidelines analysis that is in the plea agreement and the

18  probation report includes all insider trading linked to the

19  conduct of all culpable persons regardless of the count in

20  which the profits were made or losses avoided.

21          Your Honor, would you like me to go through each

22  particular entity as you mentioned?

23          THE COURT:  Yes, please.

24          MS. APPS:  I will note in doing that, your Honor, that

25  consistent with the guidelines standard, the government in

E4ansac1                          Sentence

1    certain cases had to come up with a reasonable estimate of loss

2    given in some cases the age of the conduct involved, and that

3    is what we in large part did.

4            THE COURT:  Actually, just before you go on,

5    nomenclature is another question that I have.

6            The plea agreement and some portions of the

7    presentence report speak in terms of profits and avoided

8    losses, and then other segments of the plea agreement speak in

9    terms of losses.  So if the government computing avoided

10   losses -- is that what the concept is?

11           MS. APPS:  Yes, your Honor.  The methodology that we

12   employed included both profits earned from illegal insider

13   trading and avoided losses from illegal insider trading.  So

14   the guidelines were based on both profits earned and losses

15   avoided.

16           THE COURT:  So there is no netting?

17           MS. APPS:  Correct.

18           THE COURT:  And a compilation of profits and avoided

19   losses as positive figures to result in the ranges that you

20   computed?

21           MS. APPS:  Correct.  As a simple illustration, if

22   illegal profits were earned by one insider trader to the tune

23   of $20 million, and another insider trader or even the same

24   insider trader had a different trade and there were avoided

25   losses of $20 million, the profit and loss amount would

E4ansac1                       Sentence

1    therefore be $40 million as a simple illustration to answer

2    your Honor's question.

3              THE COURT:  Thank you.

4              MS. APPS:  So, with respect to each of the entities

5    and I will just go down, your Honor.

6              Capital Advisors the approximate loss.

7              THE COURT:  Is that LP or LLC.

8              MS. APPS:  I beg your pardon.  LP.  Thank you.

9              Capital Advisors LP the approximate loss was a little

10   over $7 million.

11             The same is true of Capital Advisors LLC.

12             With respect to CR Intrinsic Investors LLC -- and I

13   should say, your Honor, for the first two entities, of course,

14   the guidelines range in the plea agreement consistent with the

15   statement I just made, the guidelines ranges for the first two

16   entities was between $7 and $20 million.

17             For CR Intrinsic Investors LLC, for which the

18   guidelines range was $200 to $400 million, the approximate

19   losses were in the neighborhood of $300 million.

20             Again, I am using "losses" as a shorthand for profits

21   and losses avoided.

22             THE COURT:  Yes.

23             MS. APPS:  For Sigma Capital Management LLC, your

24   Honor, the approximate or the reasonable estimate that the

25   government determined, which includes, of course, the conduct

E4ansac1                        Sentence

1    as I mentioned of all eight individuals and all culpable

2    individuals, and conduct of others who traded on culpable

3    information, the approximate amount is between $7 and $8

4    million.

5            THE COURT:  And the range for that company?

6            MS. APPS:  The range for that entity, your Honor, as

7    set forth in the plea agreement was between $7 and $20 million.

8            That is a very conservative estimate, your Honor.  As

9    I said, there were some individuals whose conduct dated back to

10   1999 and 2002 who we were not able to ascertain figures, but we

11   do think that the overall numbers that I have presented to the

12   Court were a fair reflection of the information that was

13   available to the government.

14           THE COURT:  So then the maximum fine amount for Count

15   One for each of LP and LLC would have been $14 million?

16           MS. APPS:  Yes, your Honor, if you double each.

17           THE COURT:  For Count Two it would be the $25 million

18   since that is higher than the $14 million doubling.

19           And for CR Intrinsic, then, the maximum fine on each

20   count would have been $600 million?

21           MS. APPS:  Correct.

22           THE COURT:  For Sigma the maximum fine would have been

23   $14 million and $25 million?

24           MS. APPS:  Yes, your Honor.

25           THE COURT:  With respect again to the consideration of

1    action by all culpable persons, I am not asking for specific

2    headcounts, but for a sense of the factual basis of the

3    government's assertions that the conduct was pervasive in this

4    group of companies and its leadership, given that we have

5    convictions on pleas or trial of only eight identified

6    individuals, and the companies together had something on the

7    order of hundreds of employees?

8           MS. APPS:  Your Honor, yes.  There were, of course,

9    six guilty pleas and two individuals who have been convicted

10   after trials.  Of course, there were a handful of other

11   individuals who were identified in the indictment and whose

12   conduct and trading has been included in the guidelines.

13          While it is true there are or at various times have

14   been approximately 800 people, nonetheless to have eight

15   criminal convictions in a single institution is remarkable.

16   And we would submit it is pervasive.  It is certainly greater

17   than the number of individuals for any institution in our

18   experience, our collective knowledge I should say, to have so

19   many in a single institution.  And so I think the appropriate

20   perspective here is to look at the number of proven instances

21   of insider trading and the number of individuals involved, and

22   we submit to the Court that that is in fact a large number

23   given the size of the institution and our experience dealing

24   with other institutions of similar size and indeed of all

25   sizes.

E4ansac1                          Sentence

1              THE COURT:  Thank you.

2              I intend to instruct the probation department to

3     refine the language in certain of the paragraphs.  So at this

4     time, based on the information that you have given to me, I

5     would like to go over the paragraphs that need to be changed.

6     They are parallel in each of the reports, so that shouldn't

7     take an inordinate amount of time.

8              In paragraph 25 of each report we have a reference to

9     losses from Freeman and Richard Lee's activities.  That should

10    be profits and avoided losses; would that be correct?

11             MS. APPS:  One moment, your Honor.

12             THE COURT:  I'm sorry.  I am looking at the Capital

13    Advisors LP report, but I think it's the same throughout.

14             MS. APPS:  You said paragraph 5, your Honor?

15             THE COURT:  25.

16             MS. APPS:  I beg your pardon.

17             Yes, your Honor.  It should be profits and losses

18    avoided.

19             THE COURT:  All right.

20             And the same in paragraph 27 with respect to Freeman?

21             MS. APPS:  Yes, your Honor.

22             THE COURT:  And in paragraph 30 with respect to

23    Steinberg, Horvath, Wang, and Choo-Beng Lee?

24             MS. APPS:  Yes, your Honor.

25             THE COURT:  In paragraph 32 as to Longueuil?

E4ansac1                    Sentence

1          MS. APPS:  Yes, your Honor.  It really should be a

2    global fix.  Your Honor is quite right.  The term used here is

3    losses, but it's meant to include both.

4          THE COURT:  Yes.

5          And also 33.  It should be a global fix except that

6    the reports aren't internally consistent either.  So those are

7    the paragraphs in which we found that language.

8          And then with respect to the million dollar fine

9    maximums, paragraph 88 -- sorry, it's 89 in the LP report.

10   That should be Count One as 14 million and then Count Two as

11   25.

12          In LLC, it's paragraph 88.  In Sigma Capital

13   Management LLC, it's paragraph 88.  So that would be Count One

14   as 14 million.

15          And then in CR Investors, paragraph 87 as to Count One

16   lists 550, but it would be 600 as a more appropriate

17   approximation.

18          MS. APPS:  Yes, your Honor.

19          THE COURT:  And the same for Count Four.

20          Thank you.

21          I would like now to move on to a clarification on the

22   nonfinancial components of the proposed sentence.

23          First I would like you to address the relation of the

24   realistically expected -- well, the relationship of the

25   probation term proposed to be imposed to the expected business

activity of the defendant entities and when the events that are

proposed to trigger the termination of probation have occurred

or are expected to occur.

            MS. APPS:  Your Honor, the plea agreement provides

that the maximum term of probation is five years, as your Honor

has pointed out.  But the defendants may seek an earlier

termination if the entities are fully wound down.

            Your Honor has noted that these four defendant

entities as set forth in the plea agreement as a condition of

the plea agreement will be terminating their investment

advisory business.  In the process they are being wound down we

have been informed by S.A.C. capital.

            Some of them are close to being finally wound down,

but at least one of those entities, Capital Advisors LP, it is

my understanding from defense counsel it will remain active, or

operational I should say, for some further time in order to

deal with investments that are less liquid and will take longer

to wind down.

            But as to the exact date as to when that is

anticipated to happen, I think Mr. Klotz may be better able to

give an update on that, but in large part, with the exception

of the LP entity, the other entities are expected to wind down

relatively quickly.  The LP entity may stay active for a

considerably longer period of time.

            THE COURT:  Has the restructuring transaction that was

1   to take the investment activity to the new entities including

2   Point 72 and certain other entities, did that close or take

3   effect on April 7 as expected?

4            MR. KLOTZ:  I think, again, my understanding is the

5   new entities are now in existence, if that is answering your

6   Honor's question.

7            I think Mr. Klotz is more familiar with exactly how

8   those entities are structured, but my understanding generally

9   is that they are ultimately owned by the same owner, the S.A.C.

10  owner who owns the four entity defendants, and those new

11  entities will be owned by the same owner and they are now

12  operational.  I believe the date may be April 7, but I believe

13  Mr. Klotz can confirm.

14           THE COURT:  Mr. Klotz, if you would.

15           MS. APPS:  Just to be clear, they are not doing

16  third-party investment advisory business.  They are out of the

17  business of investing third-party investors' money.

18           THE COURT:  Yes.  But even for the retained

19  proprietary investments, if you will, it's sill multiples of

20  billions of dollars that will be in the market through the

21  activities of those companies?

22           MS. APPS:  Yes.

23           THE COURT:  Correct?

24           MS. APPS:  Absolutely, your Honor.

25           MR. KLOTZ:  The summary that Ms. Apps gave, your

E4ansac1                          Sentence

Honor, is essentially correct.  The three of the four defendant

entities Advisors LLC, Sigma LLC and CR Intrinsic, are no

longer actively managing assets at all, and the new entities

the family office entities have gone into business effective

April 7, which was Monday.

Capital Advisors LP is no longer actively managing

outside money with the exception of a limited number of

difficult-to-liquidate assets that are held on behalf of

outside investors as well as inside investors.  Other than

winding down those investments, Advisors LP will have no other

investment advisory activities and will not be part of the

family office going forward.  That activity is a little bit

difficult to predict.  We are in discussions with the

Securities and Exchange Commission about that, but we expect

that activity to spread over perhaps as much as -- well, it

could very well be a year and a half or more that it will take

to liquidate those investments, but they are a relatively

modest amount of money, and it's just the

difficult-to-liquidate investments that are at issue.

THE COURT:  The proposed probation term -- just give

me one moment, thank you for bearing with me on this -- is

proposed to be terminated or required to be terminated upon the

Court's determination that a particular S.A.C. entity defendant

has been dissolved or has ceased conducting any securities

trading or asset management business?  So should it be my

E4ansac1                          Sentence

1     expectation that I will be hearing promptly about the

2     dissolution of everything other than the LP defendant that has

3     the illiquid assets?

4               MR. KLOTZ:  I am not certain how quickly we will be

5     before your Honor again.  I don't believe that any of the

6     entities intend to dissolve.  We will have to examine when they

7     have ceased doing any investment advisory activities.

8               But you're right, that the exception for sure will be

9     Advisors LP, which we expect to continue only with respect to

10    the illiquid side-pocket investments for a period probably

11    exceeding a year.

12              THE COURT:  Would it be the Advisory LP's position

13    that the termination provision would not apply during the

14    illiquid investment wind-down because the managing of the

15    winding down of the illiquid investments would constitute an

16    asset management business?

17              MR. KLOTZ:  Correct.

18              So we would not seek termination of probation as to

19    Advisors LP while it's continuing to perform that function.

20              THE COURT:  Thank you.

21              MS. APPS:  By the way, your Honor, also, just so you

22    know for the record, pursuant to Title 18 United States Code

23    Section 3564(c), there is a minimum period of one year for

24    early termination.

25              THE COURT:  So the stipulated provision is subject to

E4ansac1                          Sentence

1    3564.  Can you give me the specific reference again?

2                MS. APPS:  Section 3564(c).

3                THE COURT:  Thank you.

4                Now, Ms. Apps, with respect to the compliance

5    monitoring.  First, I would like you to talk about the

6    structure, and then about the specific individual proposed to

7    be the monitor.  As I read the agreement -- I want to be

8    careful to be sure that I understand this -- it appears that

9    the monitoring is a review or verification of structures and

10   procedures, but not oversight of implementation of procedures

11   in these or the new companies; would that be correct?

12               MS. APPS:  Your Honor, one slight nuance to that

13   statement.  If I could start by saying compliance is actually

14   addressed in two places in the plea agreement.

15               In one place, your Honor, and it's at page 7, as part

16   of the conditions of probation, the S.A.C. entity defendants

17   are required to maintain appropriate compliance procedures to

18   identify and prevent insider trading.  While the word

19   implementation is not used there, I think it is certainly

20   anticipated by the parties, and I have confirmed this with

21   S.A.C. capital, so it is the understanding of the parties that

22   a proper compliance procedure and policy includes an

23   appropriate and effective implementation of such compliance

24   policy and procedure.  The second place that compliance is

25   addressed in the agreement is earlier in the agreement, and it

E4ansac1                         Sentence

is page 3 and it addresses what your Honor alluded to, namely,

the hiring of an independent consultant and the procedures

involved with that.

          If I may take a moment to describe what is involved

with that, your Honor, and to what entities it applies.  That

condition applies beyond just the four S.A.C. entity defendants

in this case.  It also applies under the agreement to successor

entities or any newly formed entities provided that they are

owned by the S.A.C. owner.

          It is our understanding that the entities that your

Honor referenced earlier, Point 72 asset management, and there

are a few others that S.A.C. has created, those are subject to

the compliance conditions that I will elaborate on in a minute

that are on page 3.

          As to those compliance conditions, your Honor,

implementation is clearly part of those compliance conditions

because the agreement provides that not only that S.A.C.

entities and the new entities must have appropriate compliance

policies and procedures, but that an independent compliance

consultant will be retained by S.A.C. Capital at their expense

to evaluate and review the compliance policies and procedures

and that includes "identifying any deficiencies in any insider

trading compliance procedures, and coming up with steps to

correct any such deficiencies."  Obviously involved in that is

the effective implementation of the compliance policies and

E4ansac1                          Sentence

1    procedures.

2           The duties essentially are that compliance consultant

3    is to file within 45 days of retention a report to the United

4    States Attorney's Office that describes the insider trading

5    compliance procedures, any deficiencies identified, and any

6    steps that the entities need to take in order to correct those

7    deficiencies.

8           Thereafter, the compliance consultant is required to

9    file a six-month report that describes the progress that is

10   taken by the S.A.C. entities and any successor entities to

11   correct those identified deficiencies.  Of course, as the

12   agreement continues, there is, at the discretion of the United

13   States Attorney's Office, a final report that the compliance

14   consultant may file with the United States Attorney's Office to

15   further update the office on the progress towards correcting

16   any deficiencies in the compliance policies and procedures.

17          So that condition, your Honor, which does apply to

18   successor entities is not limited just to the four S.A.C.

19   entity defendants, does involve implementation, we would submit

20   expressly involves implementation of the compliance procedures

21   in an effective and appropriate manner.

22          THE COURT:  So six weeks into the life of the new

23   companies, the consultant is to review the policies and

24   procedures that are in place, and at that six-week point, or as

25   of the six-week point, the consultant is to identify any

1   deficiencies.  The six-month follow-up is for corrections of

2   the deficiencies that were identified at six weeks, but it is

3   not a comprehensive re-review.  Am I correct?

4           MS. APPS:  I think inherent in the six--- part of the

5   six-month report, and I think it's a fair reading of the plea

6   agreement is to continue to evaluate the compliance procedures

7   and policies, the steps that have been taken to correct them on

8   a holistic nature.  And it wouldn't be limited to merely

9   checking whether a specific steps have been properly

10  implemented, but making a determination as a whole as to

11  whether the compliance procedures are effective and adequate to

12  prevent insider trading.  In addition, of course, as it states

13  in the agreement, they are including things such as hiring,

14  information gathering, and training and the related practices.

15  So the mandate is quite broad, your Honor.

16          THE COURT:  Mr. Klotz and Mr. Nussbaum, is that your

17  understanding of the scope of the powers and anticipated review

18  by the compliance consultant?

19          MR. KLOTZ:  It is, your Honor.

20          THE COURT:  Mr. Nussbaum?

21          MR. NUSSBAUM:  It is, your Honor.

22          THE COURT:  Thank you.

23          Ms. Apps, it has been the government's position in the

24  prosecutions, hasn't it, that these companies had, at least to

25  a certain extent facially compliant procedures, but didn't

E4ansac1                          Sentence

1    really implement them.

2            MS. APPS:  Your Honor, the government's view of S.A.C.

3    Capital's compliance procedures is that, while they may have

4    had compliance policies on paper, they were plainly ineffective

5    at deterring or preventing insider trading.  In fact, as

6    detailed in the government's sentencing memo, it was really not

7    until quite late in the charged period of the insider trading

8    scheme, which is from 1999 to 2010, that the defendants even

9    began to implement systems that would detect suspicious trading

10   or take a more active role in reviewing e-mails and other

11   electronic correspondence.

12           The government also found other failures in the hiring

13   process which are outlined in the government's sentencing

14   memorandum in its use of expert networks.  So there were in the

15   government's view a series of deficiencies in the

16   implementation certainly, but in a very sort of active or

17   proactive approach that should be taken to compliance by an

18   institution like S.A.C. Capital.

19           THE COURT:  The intention is that this consultant is

20   to look on an holistic basis at the beginning and at least the

21   six-month point for robust implementation and compliance with

22   the procedures that are developed?

23           MS. APPS:  Yes, certainly with respect to the insider

24   trading, including the hiring, information gathering, and

25   training and related practices, yes.

E4ansac1                          Sentence

1          THE COURT:  Thank you.

2          Would you speak about the identity and the

3    qualifications of the consultant and the criteria that

4    government has used in determining that the monitor who is

5    proposed is acceptable?

6          MS. APPS:  Yes, your Honor.

7          The individual who has, I think he has now been

8    retained or is in the process of being retained by S.A.C.

9    entity defendants is Bart Schwartz, who is chairman and CEO of

10   a company called Guidepost Solutions.  Pursuant to the plea

11   agreement Mr. Schwartz was proposed as a potential independent

12   compliance consultant to the government.

13         The government has, in fact, a formal committee

14   structure to evaluate candidates for these positions and

15   reviews materials and interviews individuals.

16         Among other things, the criteria for evaluating

17   candidates for positions like compliance consultant -- and

18   there are other types of positions that the government is

19   accustomed to evaluating individuals for, such as monitorships

20   and receiverships, but the criteria includes and is not limited

21   to:  Reputation for integrity and independence of the

22   candidate; the experience of the candidate as a monitor or

23   whatever other position they are applying for, particularly

24   that experience in similar contexts involving federal

25   proceedings; a candidate's proposed approach to the task; the

1    staff and team that will support the candidate in carrying out

2    the particular engagement; and, of course, evaluations from

3    references from prior monitorships.

4            THE COURT:  The government has approved Mr. Schwartz,

5    is that correct?

6            MS. APPS:  Mr. Schwartz has been approved to act as an

7    independent compliance consultant for S.A.C. Capital.  That is

8    correct, your Honor.

9            THE COURT:  The conflict issue that has been flagged

10   in the newspapers of late with respect to a deployment by one

11   of the new entities, I believe of a relative of a principal of

12   Guidepost, what is the government's view as to the significance

13   and/or elimination of that issue?

14           MS. APPS:  Your Honor, it is our understanding, and

15   actually Mr. Schwartz is here in the courtroom today, but it is

16   our understanding that the relative who was employed by

17   Mr. Schwartz's firm had no substantive involvement at all in

18   relation to the investigative and compliance monitoring

19   division of Guidepost Solutions.  In other words, he was not

20   and has not been in any way involved in the sort of projects

21   for which Mr. Schwartz was being considered for the purposes of

22   the compliance consultant position.  So the government saw no

23   conflict in that role and sees no conflict today for

24   Mr. Schwartz in that role.

25           THE COURT:  The government sees no conflict in the

E4ansac1                        Sentence

1    work and also sees no potential conflict or cause for concern

2    in the sort of broader gestalt of loyalty to persons who have

3    connections to the firm?

4              MS. APPS:  No.  Mr. Schwartz was questioned about

5    this, and the government determined there is no conflict and

6    sees no conflict as articulated by your Honor.

7              I will point out also that my understanding is this

8    individual was in the process in fact of leaving Guidepost

9    Solutions.  That was information that was provided to us before

10   Mr. Schwartz was approved for the position and we understand

11   that is still true today.

12             THE COURT:  Thank you.

13             Now --

14             MS. APPS:  Sorry.

15             THE COURT:  I am giving you a workout today.

16             MS. APPS:  No worries.

17             THE COURT:  Let us move on to the basis and structure

18   of the proposed forfeiture component.  Specifically, I would

19   like to know what the status of the cases that were handled by

20   Judges Marrero and Baer are and whether any of the payments

21   that have previously been proposed or made and are proposed to

22   be used to offset the forfeiture obligation portion of the

23   sentence here are payments in the nature of civil penalties as

24   opposed to disgorgement or other types of funds that would

25   conceptually be within the scope of forfeiture.

E4ansac1                    Sentence

1            MS. APPS:  Your Honor, as an initial matter, as your

2       Honor noted, particularly with the question that you posed in

3       the order that you issued, there is a criminal fine in the

4       criminal case of $900 million and a civil forfeiture judgment

5       in the civil case of an additional $900 million, so together

6       $1.8 billion aggregate financial penalty on the defendants in

7       this case.

8            THE COURT:  Yes.  But for the existence of the

9       separate civil litigation, given the nature of these crimes and

10      the provisions of Title 18, I would be obliged to impose a

11      forfeiture obligation directly in the criminal case in addition

12      to any fines, correct?

13           MS. APPS:  Of course, forfeiture is discretionary in

14      any criminal case, but really the larger point I was trying to

15      make, your Honor --

16           THE COURT:  I thought that the forfeiture of proceeds

17      of the criminal activity was mandatory?

18           MS. APPS:  I should say, the government does not

19      always have to -- you're quite correct, your Honor.  The

20      government does not always have to seek forfeiture in every

21      criminal case.

22           THE COURT:  It is correct that it's discretionary as

23      to whether you put in in the indictment, but if it's in the

24      indictment.

25           MS. APPS:  That is what I meant to say, your Honor.  I

E4ansac1                        Sentence

1    apologize.

2              THE COURT:  Yes.

3              MS. APPS:  The larger point I was trying to make, your

4    Honor, is simply that when you look at the -- of course, this

5    was a global resolution between the parties.  The resolution of

6    the criminal case and the civil forfeiture case occurred at the

7    same time.  It was intended to be a single, integrated

8    resolution.

9              The civil forfeiture case that was filed before Judge

10   Sullivan was in fact of a nature that was far broader than the

11   criminal forfeiture provision in the indictment.  The civil

12   case was seeking forfeiture of property involved in money

13   laundering, which included insider trading proceeds and the

14   property that facilitated the insider trading and money

15   laundering.

16             So the civil forfeiture judgment of $900 million was,

17   we would submit, far greater than the criminal forfeiture that

18   could have been obtained through the criminal proceeding and is

19   in many multiples, as we have noted before, of the losses

20   involved and the trading profits and losses involved in the

21   case.

22             With respect to your question about the relationship

23   to the SEC actions and the credit that is given to S.A.C.

24   Capital for the $616 million that has been committed to pay to

25   the Securities and Exchange Commission.  As I understand, the

latest is Judge Baer has approved and signed off on the

judgment against Sigma Capital Management LLC, and Judge

Marrero has issued an opinion I think saying that he agreed to

approve the settlement in the civil case, but he is subject to

a pending Second Circuit decision is my understanding of the

Judge Marrero decision.

So those amounts are permitted to be paid by S.A.C.

Capital, and for that reason we gave a credit to S.A.C. Capital

and the entity defendants in the related civil forfeiture

action.  And the amount to be paid to the SEC of course is $616

million, which leaves, of the $900 million, approximately $284

million to be paid, which in and of itself is a very large

forfeiture amount.  Certainly that number alone exceeds the

sort of criminal forfeiture penalty that would have been

obtained in the criminal case alone.

THE COURT:  So the basis for a criminal forfeiture

penalty in this criminal case in the government's view and

based on its investigations would have been limited to the $321

million or so figures that we discuss at the outset here, so

that the Court here ought not properly to be concerned about

the designation of amounts clearly in excess of that base

figure as civil penalties as, for instance, in the Sigma

capital and S.A.C. Select judgment, which was split, $13

million split evenly between disgorgement and civil penalty?

(Continued on next page)

E4ALSAC2                        Sentence

1            MS. APPS:  Your Honor, the only point that I would

2     disagree with your Honor is in fact I think that even less

3     could have been recovered in the criminal action.  It is at

4     least in dispute or it's arguable that the government may not

5     recover avoided losses or may not recover gains to innocent

6     third party investors who had no involvement in the criminal

7     conduct under recent Second Circuit precedent.  So there would

8     be at least a dispute as to whether or not the government could

9     recover those items, and those form a portion of the

10    300 million that we talked about earlier today as the total

11    number for profits gained and losses avoided.

12            And because the forfeiture provision in the criminal

13    case is based on the insider trading conduct that is therein

14    alleged and the wire fraud conduct that is alleged, whereas as

15    I mentioned the civil forfeiture case has a broader nature and

16    is based on, as I discussed, all property involved in money

17    laundering and which is broader than what could have been

18    obtained in the criminal case and has ultimately resulted in a

19    payment of a forfeiture amount covering all proceeds of the

20    criminal activity, it resulted in a payment that was multiple

21    times what I think would have been obtained solely through the

22    criminal proceeding.

23            THE COURT:  Thank you.  That actually concludes for

24    the moment my series of questions for you, and I thank you for

25    your candor and responsiveness to the Court's concerns.

1        As I get ready to invite counsel to speak further to

2   the merits of the proposed plea agreement, I remind you that in

3   the order I indicated that I have concluded that I have to

4   consider whether an upward departure from the guideline fine

5   range is appropriate under 8C4.10, and I raise that because of

6   the apparent failures of the organizations to maintain and

7   implement effective mandatory compliance programs and detect

8   and prevent the crimes of conviction.  And so I would hope that

9   I would hear from both sides here whether you believe that that

10  issue is addressed sufficiently by the amounts stipulated in

11  the plea agreement, and I would also ask that any specific

12  objections to the sentencing recommendations of the probation

13  department be addressed in remarks as well.

14        And so, with that, Mr. Klotz, would you like to speak

15  first?

16        MR. KLOTZ:  Yes, your Honor.

17        With respect to the upward departure, the 8C4.10,

18  we've been unable to find any law that specifically

19  addresses -- it's the second prong of that that I think your

20  Honor is interested in -- whether that applies here.  My

21  reading of that provision is it only applies to an institution

22  which has a legal requirement that it have a compliance

23  program, which I understand to mean there is a statute that

24  says if you're a particular type of entity, you're required to

25  have a compliance program.

1           THE COURT:  There's no such requirement for an

2    investment advisory business?

3           MR. KLOTZ:  There is for a registered investment

4    business.  S.A.C. was not registered at the time of the conduct

5    in question.  Obviously, we had a compliance program.

6    Obviously, we believed we took compliance seriously.  But there

7    was not actually a legal mandate that we have that compliance

8    program and so I don't think -- I haven't found any case law

9    one way or the other, but I think that's the natural reading of

10   that provision and I don't think it applies to us because we

11   only became a registered entity in 2012, which is after the

12   period of time in question here.

13          I would also point out that to the extent that there

14   is any issue, the fine that we have agreed to is in fact an

15   above-guidelines fine in any event.  So I'm not certain that a

16   contrary conclusion would lead to a different view of the plea

17   agreement.

18          And if you wanted me to address the probation

19   department's recommendations as long as I'm speaking.

20          THE COURT:  Yes, anything and everything you'd like

21   the Court to hear.

22          MR. KLOTZ:  Sure.  So there were two portions of the

23   probation department recommendations that I thought I ought to

24   bring to your Honor's attention.

25          First, the probation department recommended that the

E4ALSAC2                        Sentence

 1    fine be payable within 30 days of imposition of sentence.  The

 2    plea agreement provides that the fine is payable within 90 days

 3    of imposition of sentence.  I've spoken to the probation

 4    department.  They agree that was simply an oversight.  They did

 5    not intend to depart from what the plea agreement provided.

 6            So I would simply ask your Honor in imposing sentence,

 7    assuming your Honor approves the plea agreement, to make clear

 8    that the payment would be due consistent with the plea

 9    agreement, namely, 90 days after imposition of sentence.

10            Then, secondly, the probation department had a

11    specific condition of probation that related to providing the

12    department with financial information about the defendants.

13    And, again, the plea agreement was an attempt by the parties to

14    specify all of the conditions of probation and it did so, both

15    regular conditions and it specified one special condition.

16    Providing financial information was not a special condition.

17            I haven't spoken to the probation department about

18    that provision.  It's my understanding that in many

19    circumstances they recommend it.  In this case it's actually

20    not provided for in the plea agreement and would go beyond the

21    plea agreement.  And, in our view, it's really not necessary

22    because, to begin with, we provided extensive financial

23    information to the probation department in connection with

24    their preparing the report and the fine is going to be paid

25    within 90 days in any event.  So I think ongoing financial

1    information is not needed, but the main point is it's not

2    provided for in the plea agreement.

3           THE COURT:  And so the plea agreement provision in

4    terms of supervision during a probationary period is

5    supervision via the compliance monitoring arrangement with the

6    U.S. Attorney's Office only and not supervision by the

7    probation arm of the judicial branch of compliance with

8    mandatory conditions of probation such as -- I'm sorry.

9           MR. KLOTZ:  I didn't mean to interrupt.

10          THE COURT:  I believe that even for an entity

11   defendant, compliance with federal, state, and local laws is a

12   mandatory statutory condition of probation.  And so at a

13   minimum I would normally expect that my probation department

14   would be in some relation with an entity that is under

15   supervision.  But, as you say, this is an 11(c)(1)(C) plea

16   agreement and so I have to take it as a whole or not.

17          So your position and understanding as to the deal is

18   that the probation department would not be involved in any way

19   in active supervision?

20          MR. KLOTZ:  I'm not making a point that goes that far,

21   your Honor.  We do contemplate that we would be subject to

22   probation department supervision.  That supervision would

23   include the standard provisions, whatever they are, and also

24   there's a provision in the plea agreement that we're required

25   to maintain effective compliance procedures.  That's a

E4ALSAC2                          Sentence

1   condition of probation.

2           What is not a condition of probation that we agreed to

3   is that we regularly provide financial information which the

4   probation department recommends as a special condition, and I'm

5   simply saying that ought not to be included.  We ought to be

6   subject to the standard conditions.  But there will be

7   probation department supervision, and we're not suggesting

8   otherwise.

9           THE COURT:  Thank you.

10           MR. KLOTZ:  And beyond that, Judge, everything that I

11   had to say on behalf of the defendants I put in my letter, and

12   I would urge you to accept the plea agreement.

13           THE COURT:  Thank you.

14           Ms. Apps.

15           MS. APPS:  Which point would you like me to address

16   first, your Honor?

17           THE COURT:  This one is up to you.

18           MS. APPS:  Just to finish.

19           The plea agreement does provide that the S.A.C. entity

20   defendants will be subject during term of probation to, first,

21   applicable mandatory conditions of probation, as well as,

22   second, the compliance condition, the requirement of

23   maintaining adequate compliance policies that we discussed

24   earlier.

25           At the time of the negotiation of the plea agreement

 1   and previously, S.A.C. Capital had provided to us an enormous

 2   amount of financial information.  So we did not, particularly

 3   in light of the nature of these crimes, which is inside trading

 4   rather than accounting fraud or some other type of fraud, we

 5   did not see it necessary to include that as a provision

 6   notwithstanding probation has requested that that condition to

 7   supply financial statements be included as part of the terms of

 8   the probation.

 9           Now, your Honor, just from an overall perspective, as

10   we noted in our sentencing memorandum, when you take account,

11   we would respectfully submit that the Court should accept and

12   adopt the plea agreement and impose a sentence in accordance

13   with the terms set forth in the plea agreement which includes a

14   criminal fine of $900 million, which is, to the knowledge of

15   the government, the largest criminal fine imposed in an insider

16   trading case in history.

17           When you take that together, as we submit you should,

18   with the judgment in the forfeiture action which imposes an

19   additional $900 million in forfeiture, obviously, with credit

20   for amounts committed to be paid to the Securities and Exchange

21   Commission by two of the S.A.C. entity defendants, taken

22   together, that large criminal fine and forfeiture amount for an

23   aggregate of $1.8 billion serves all of the goals of

24   sentencing.  It imposes an appropriate punishment.  It acts to

25   deter, both specific deterrence as to the S.A.C. entity

E4ALSAC2                          Sentence

1    defendants and the successors, and general deterrence to other

2    financial institutions as a whole.

3              And, finally, your Honor, it is appropriate in light

4    of the conduct that is set forth in the indictment and

5    represents appropriate punishment, particularly when taken with

6    the nonfinancial penalties which we've been discussing today.

7              THE COURT:  Thank you.

8              Since the request for restitution by Elan has been

9    withdrawn, we need not address that.

10             Mr. Nussbaum, is there anything that you would like to

11   say on behalf of the defendants?

12             MR. NUSSBAUM:  Yes.  Very briefly, your Honor.  Thank

13   you.

14             As we said in our letter to the Court, we accept

15   responsibility for the misconduct of our employees that has

16   brought us before your Honor.  We have paid and are paying a

17   significant penalty for this misconduct.  This includes not

18   only the heavy penalty that this Court may impose and the other

19   sanctions that have been imposed on us, but also the stain on

20   the reputations of the honest and hardworking people at our

21   firm.  We are absolutely committed to moving forward in a

22   positive and responsible manner.

23             Thank you.

24             THE COURT:  Thank you.

25             At this point we will take a brief ten-minute recess

1    and then we will reconvene.  Thank you.

2              (Recess)

3              THE COURT:  I have reviewed carefully all of the

4    submissions in advance of today and listened carefully to

5    everything that has been said here today.

6              I adopt the factual recitation that is set forth in

7    each of the presentence reports with the anticipated changes

8    that we've previously identified.

9              This Court has discretion taking into account the

10   applicable statutory provisions in exercising its power under

11   Title 18 of United States Code Section 3553(a) to determine the

12   particular sentence to be imposed in each particular case.

13   Section 3553(a) requires the Court to consider a number of

14   factors and sentencing goals and requires the Court to impose

15   sentences that are sufficient but not greater than necessary to

16   comply with the statutory sentencing purposes.

17             In light of this obligation, I have considered

18   carefully the proposed disposition within the framework of

19   Section 3553(a) and its factors, and I will speak to some of

20   those factors.

21             First, with respect to the provisions of the

22   sentencing guidelines as to S.A.C. Capital Advisors LP, I

23   conclude that the applicable guideline offense level is 28, the

24   culpability score is seven for the reasons that are outlined in

25   the presentence report, and I adopt the grouping of charges

1    analysis as set forth in the presentence report.  Accordingly,

2    the advisory guideline range for a fine for this defendant is

3    $8,820,000 to $17,640,000.

4            As to S.A.C. Capital Advisors LLC, the guideline

5    offense level is 28 and the culpability score is seven, as set

6    forth in the presentence report, and I adopt the grouping of

7    charges analysis in the presentence report.  Therefore, the

8    advisory guideline fine range for this defendant is $8,820,000

9    to $17,640,000.

10           As to CR Intrinsic Investors LLC, the applicable

11   guideline offense level is 36 and the culpability score is

12   seven.  I adopt the grouping of charges analysis set forth in

13   the presentence report, and the advisory guideline fine range

14   for this defendant is $385 million to $770 million.

15           And as to SIGMA Capital Management LLC, the applicable

16   guideline offense level is 28, the culpability score is seven.

17   I adopt the grouping of charges analysis, and the advisory

18   guideline range for a fine for this defendant is $8,820,000 to

19   $17,640,000.

20           I have used the November 2013 edition of the

21   guidelines manual in reaching these determinations.

22           The fines proposed in the plea agreement exceed those

23   recommended by the guidelines.  I have considered whether an

24   upward departure from the guidelines is necessary.  And in view

25   of the fact that the proposed fines exceed the guideline level

1    and the question and the minimum as to whether the predicates

2    for the upward departure are present in this case, I have

3    determined that no further upward departure is necessary.

4            I have also considered carefully all of the statutory

5    sentencing factors and goals and the information put before me

6    in light of those factors and goals in deliberating as to

7    whether to accept the proposed plea agreements.  I will address

8    briefly certain of the statutory factors.

9            First, the nature and circumstances of the offense.

10   These defendants committed very serious financial crimes of a

11   type that can easily undermine the integrity and the public

12   perception of our nation's securities exchanges.

13           S.A.C. Capital Advisors LP is responsible for profits

14   and avoided losses from insider trading of approximately

15   $7 million.

16           S.A.C. Capital Advisors LLC is responsible for profits

17   and avoided losses of approximately $7 million.

18           SIGMA Capital Management similarly is responsible for

19   profits and avoided losses of approximately $7 million.

20           And CR Intrinsic Investors LLC is responsible for the

21   staggering amount of approximately $300 million in profits and

22   avoided losses.

23           Through their hiring practices, these defendants

24   actively sought to engage portfolio managers and analysts who

25   had shown that they had access to material nonpublic

1   information.  Those managers with insider connections did not

2   hesitate to encourage and exploit the willingness of the

3   insiders to breach their own duties to the companies for which

4   they worked.

5        The defendants failed to ensure that the recruits had

6   not and would not use such inside information to trade, and

7   management created and maintained a culture that rewarded this

8   illegal activity.  Management addressed only the merits of

9   trades, the financial merits of trades, I should say, rather

10  than the source of the information and, in doing so, ignored

11  blatant red flags concerning the nature of the material

12  nonpublic information and how it was obtained by employees.

13       The defendants had some facially appropriate

14  compliance policies and procedures but did not implement them

15  to ensure that employees would not trade on material nonpublic

16  information until at least 2010.  These crimes clearly were

17  motivated by greed.  And these breaches of the public trust

18  require significant penalties commensurate with the magnitude

19  of the crimes which will, insofar as the law permits, punish

20  these defendants and deter those involved with them and others

21  from engaging in insider trading in the future.

22       There is sound reason for concern for promotion of

23  respect for the law and deterrence in addition to the obvious

24  need to ensure punishment and the forfeiture of ill-gotten

25  gains.  The Court has considered these issues in evaluating the

E4ALSAC2                     Sentence

 1   proposed disposition in light of the measures that are

 2   available to it in the context of the government's decision to

 3   prosecute these entities.  None of the individuals involved is

 4   before the Court today.

 5          The sentencing tools available to the Court in this

 6   case are thus limited to the fines imposed on the entities,

 7   probationary terms and conditions that apply to the defendant

 8   entities, and forfeiture by the entities.

 9          As to the defendants' history and characteristics, the

10   defendants were once a group of very well-respected hedge funds

11   earning returns often in excess of 25 percent.  We now know how

12   some of that was achieved.  And the growth of these funds over

13   30 years or almost 30 years was in part, we now know, due to

14   the illegal use of material nonpublic information by their

15   employees.

16          The defendants will still be significant investors in

17   the market with billions of dollars under management, a very

18   small proportion of which is attributable to third party

19   investors.  The defendants have stated openly and publicly that

20   they are deeply remorseful for the offense conduct and have

21   stated that they take full responsibility for the misconduct of

22   the identified employees.

23          As I have already explained, the defendants' crimes

24   were striking in their magnitude and strikingly indicative of

25   lack of respect for the law.  The proposed disposition

E4ALSAC2                          Sentence

1    addresses these factors of promotion of respect for the law and

2    deterrence and punishment with fines that exceed the guidelines

3    ranges, the requirement that these defendant entities withdraw

4    from the investment management business, outside review of

5    their compliance procedures and those of the successor

6    companies that have been established to carry on investing for

7    the Cohen family, and probation terms that will expire with the

8    dissolution or termination of trading activities by these

9    defendant companies which have already, as a practical matter,

10   been restructured out of active participation in the markets.

11        But the Court does note, as Ms. Apps has explained

12   here, that the plea agreement provides for certain compliance

13   and review undertakings that extend to successor and affiliated

14   entities.  The gross amount of the fines and forfeiture are

15   together unprecedented in insider trading cases.

16        And so having considered the underlying facts in light

17   of all of the Section 3553(a) factors, including the types and

18   statutory boundaries of the sentencing tools that are available

19   to the Court in connection with the crimes charged and to which

20   the defendants have pleaded guilty, the Court finds that the

21   significant penalties outlined in the plea agreement, including

22   a five-year probation term and a total fine and forfeiture

23   value of $1.8 billion, are reasonable within the meaning of the

24   law, sufficient, appropriate, and no greater than necessary to

25   satisfy the statutory purposes of sentencing.

E4ALSAC2                          Sentence

1           Accordingly, the Court accepts the plea agreement

2   between the government and S.A.C. Capital Advisors LP, S.A.C.

3   Capital Advisors LLC, CR Intrinsic Investors LLC, and SIGMA

4   Capital Management LLC.

5           The Court finds that the defendants are required to

6   forfeit to the United States $900 million, representing the

7   proceeds that they obtained directly or indirectly as a result

8   of their criminal activity and the global resolution of the

9   civil litigation issues as well.  And this forfeiture

10  obligation is to be satisfied in the manner set forth in the

11  plea agreement, which I will review in a moment.

12          I will now state the sentences that I intend to impose

13  pursuant to the plea agreement and Federal Rules of Criminal

14  Procedure 11(c)(1)(C) and 11(c)(4).

15          It is the judgment of this Court that each defendant,

16  namely, S.A.C. Capital Advisors LP, S.A.C. Capital Advisors

17  LLC, CR Intrinsic Investors LLC, and SIGMA Capital Management

18  LLC, is to serve five years of probation on each of its two

19  counts of conviction, such terms of probation to run

20  concurrently, subject to the statutory minimum term required by

21  Title 18 of the United States Code Section 3564(c).

22          The probation with respect to a particular S.A.C.

23  entity defendant will be terminated and any remaining term

24  discharged upon the Court's determination that such defendant

25  has, one, been dissolved; or, two, has ceased conducting any

1  securities trading or asset management business.

2          During the probation term each defendant will be

3  subject to the following mandatory condition of probation.

4          The defendant shall not commit another federal, state,

5  or local crime.

6          S.A.C. Capital Advisors LP, S.A.C. Capital Advisors

7  LLC, CR Intrinsic Investors LLC, and SIGMA Capital Management

8  LLC must each also meet the following special conditions.

9          Each of the defendants must cease operating as an

10 investment advisor and must not accept any additional funds

11 from third party investors.  The timing and manner in which the

12 investment advisory businesses of the defendants wind down,

13 their registrations become suspended or revoked, and

14 discontinue operations shall be on terms satisfactory to the

15 Securities and Exchange Commission.

16         The defendants must maintain compliance policies and

17 procedures reasonably designed to identify and prevent insider

18 trading.

19         The defendants must retain a compliance consultant at

20 their own expense no later than ten days from today to evaluate

21 and report on the insider trading compliance procedures of the

22 defendants, affiliates, and any other existing or newly formed

23 entities owned or controlled by the owners of the defendants

24 involved in the trading of securities.

25         And I will refer to this group of entities

collectively as the entities subject to compliance review.

The compliance consultant shall:

1.  Promptly review the insider trading compliance procedures of the entities subject to compliance review.

2.  Identify any deficiencies in insider trading compliance procedures and provide the entities subject to compliance review with an opportunity to correct these deficiencies.

3.  File within 45 days of retention a report to the Office of the United States Attorney that describes any insider trading compliance deficiencies identified and any steps the entities subject to compliance review have taken or agreed to take to correct these deficiencies.

4.  File within six months of retention a report to the Office of the United States Attorney that describes progress by the entities subject to compliance review to correct the identified deficiencies.

5.  File, if deemed necessary by the Office of the United States Attorney in its sole discretion, a final report to that office that addresses any continuing deficiencies identified in the six-month report.

Defendants will be supervised by the district in which they operate their respective businesses.

S.A.C. Capital Advisors LP will be ordered to pay a fine in the amount of $1 million as to Count One and

1    $25 million as to Count Two.

2              S.A.C. Capital Advisors LLC will be ordered to pay a

3    fine of $1 million as to Count One and $25 million as to Count

4    Three.

5              CR Intrinsic Investors LLC will be ordered to pay a

6    fine of $411 million as to Count One and $411 million as to

7    Count Four.

8              SIGMA Capital Management LLC will be ordered to pay a

9    fine of $1 million as to Count One and $25 million as to Count

10   Five.

11             These obligations recognize appropriately the gravity

12   of the defendants' offenses and must be paid no later than 90

13   days from today.

14             I will further order that each defendant pay to the

15   United States a special assessment in the amount of $800, that

16   is, $400 for each of the two counts of conviction as to each

17   defendant and that is payable immediately.

18             The defendants must inform the probation department of

19   any change in financial circumstances and notify the United

20   States attorney for this district within 30 days of any change

21   of mailing address that occurs while any portion of the special

22   assessment remains unpaid.

23             I will order the defendants to forfeit $900 million in

24   connection with the stipulation and order of settlement, docket

25   entry No. 50, in the matter of United States v. S.A.C. Capital

E4ALSAC2                        Sentence

 1    Advisors LP, No. 13 Civ. 5182 here in the Southern District of

 2    New York.  This obligation includes $616 million that certain

 3    of the defendants have already agreed to forfeit to resolve two

 4    parallel actions by the Securities and Exchange Commission

 5    involving some of the instant offense conduct.  Those actions

 6    are SEC v. CR Intrinsic Investors LLC, 12 Civ. 8466(VM), and

 7    SEC v. SIGMA Capital Management LLP, 13 Civ. 1740(HB).

 8              The Court will not impose a forfeiture obligation over

 9    and above that called for by the settlement agreement that I

10    referred to a moment ago.

11              I believe that these sentences are reasonable,

12    sufficient, appropriate, and no greater than necessary to

13    satisfy the statutory purposes of sentencing which include

14    punishment and deterrence.

15              Counsel, does any of you know of any legal reason why

16    the sentences should not be imposed as stated?

17              MR. KLOTZ:  No, your Honor.

18              MS. APPS:  No, your Honor.

19              THE COURT:  The sentences as stated are imposed.

20              To the extent the defendants have not given up their

21    rights to appeal through their guilty pleas, they have the

22    rights to appeal these sentences.  If the defendants are unable

23    to pay the cost of an appeal, they may apply for leave to

24    appeal in forma pauperis.  At a defendant's request, the clerk

25    of court will file a notice of appeal.  Any notice of appeal

E4ALSAC2                         Sentence

1   must be filed within 14 days of the judgment of conviction.

2              Ms. Apps, are there any remaining counts or underlying

3   indictments that need to be addressed?

4              MS. APPS:  There are no counts to be dismissed, your

5   Honor.

6              THE COURT:  Thank you.

7              I will direct that the parties and the sentencing

8   commission be furnished with amended copies of the presentence

9   reports reflecting the corrections discussed here today.  All

10  other copies of the reports must remain appropriately

11  confidential.  If an appeal is taken, counsel on appeal are to

12  be permitted access to the reports.

13             I would like to commend and thank counsel for their

14  work in negotiating and bringing before this Court and making

15  their record as to the resolution of these charges here today.

16  And I hope that going forward the successor entities can and

17  will operate in the market as exemplars of not only financial

18  acumen but of respect and compliance with the laws.

19             I thank you all.

20             Is there anything further that we should take up

21  together?

22             MS. APPS:  Nothing from the government, your Honor.

23             MR. KLOTZ:  No, your Honor.

24             THE COURT:  Thank you.  We're adjourned.

25                              o0o